820 F.2d 321
 60 A.F.T.R.2d 87-5170, 87-2 USTC P 9386
 James POLAKOF, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Roy C. PETERSON, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Lee E. SCHWARTZ and Vera J. Schwartz, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Roman J. and Lorraine A. OLEYNIK, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
David and Frances STEVENSON, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Arlin BLACKWELL and Sharon Blackwell, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Clarence H. STEINHEBEL; Gertrude Steinhebel; Michael A.
Baker; Sue B. Baker; Leonard A. Vinci; Ken B. Teakle;
Marilyn L. Teakle; John Ferreri; June Ferreri; Dean S.
Merrick; Marilyn Merrick; Francis X. Driscoll; Patricia
B. Driscoll, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 Nos. 85-7581 to 85-7583, 85-7585 to 85-7587, 86-7312.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 14, 1987.
Decided June 22, 1987.
As Amended June 30, 1987.
 
 John Gigounas and Edward B. Simpson, San Francisco, Cal., for petitioner-appellant.
 Michael L. Paup and Theresa McLaughlin, Washington, D.C., for respondent-appellee.
 Appeal from the Decision of the United States Tax Court.
 Before WALLACE, SKOPIL and CANBY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Petitioners are limited partners in one or more partnerships organized by Cinema Financial of America, Inc. (CFA) as general partner. The limited partnerships acquired feature-length motion pictures from CFA for distribution. Early investor tax benefits were a major selling point in CFA's offerings for partnership interests; acquisition was financed through large nonrecourse notes payable from a percentage of net distribution receipts. Each petitioner-taxpayer claimed distributive shares of losses and investments for tax credit purposes.
 
 
 2
 The Commissioner of Internal Revenue disallowed the taxpayers' claimed deductions, depreciation, and investment credits. On redetermination, the Tax Court held the write-offs improper, concluding that the film activities were not undertaken for profit. Polakof v. Commissioner, 49 T.C.M. (CCH) 1300 (1985). Because the amounts of the nonrecourse notes given as partial consideration for the films greatly exceeded the films' values, the Tax Court further concluded that the debts were not genuine. Accordingly, the court sustained the Commissioner's disallowance of interest deductions.
 
 
 3
 Twenty-three petitioners now appeal the Tax Court's decision. We affirm.
 
 DISCUSSION
 I. PROFIT MOTIVE
 
 4
 Petitioners contend that the actual objective of the film ventures was to make a profit.[1] We review for clear error the Tax Court's factual finding of whether an activity is undertaken for profit. E.g., Independent Electric Supply, Inc., v. Commissioner, 781 F.2d 724, 727 (9th Cir.1986). Petitioners bear the burden of proving profit motive. Id. (citing Bolaris v. Commissioner, 776 F.2d 1428, 1432 (9th Cir.1985); Hirsch v. Commissioner, 315 F.2d 731, 738 (9th Cir.1963)).
 
 
 5
 The Tax Court made its determination of profit motive at the partnership level, Polakof, 49 T.C.M. at 1307 (citing Brannen v. Commissioner, 722 F.2d 695, 703-04 (11th Cir.1984)), and examined the actions of CFA, the general partner, for their "predominant, primary or principal objective[s]."[2] Polakof, 49 T.C.M. (CCH) at 1308. The Tax Court concluded that CFA's predominant motivation for actions taken on the partnerships' behalf was to garner tax benefits. Id. at 1308. This court has never decided whether the individual's or the partnership's intent governs.
 
 
 6
 Petitioners do not dispute that partnership motive controls. We have previously suggested that examination of individual investor motivation would yield inconsistent tax treatment for parties engaged in joint activities. Independent Electric Supply, 781 F.2d at 729. Moreover, some investors with a dominant motive of tax avoidance legitimately join business activities that have a dominant profit objective. We agree with the Fifth and Eleventh Circuits that it is the dominant economic motive of the partnership, not that of the individual investors, that is determinative. Tallal v. Commissioner, 778 F.2d 275, 276 (5th Cir.1985); Brannen, 722 F.2d at 702-04.[3]
 
 
 7
 Whether an activity is carried on for profit is determined by reference to objective standards and examination of all facts and circumstances. Independent Electric Supply, 781 F.2d at 726-27. "[O]bjective indicia may be cited to establish the taxpayer's true intent." Id. at 726 (citing Treas.Reg. Secs. 1.183-2(a) & (b)(1972)).
 
 
 8
 These ventures were undertaken in an unbusinesslike manner. Large pre-payments for CFA's services and of interest left the partnerships grossly undercapitalized. With few exceptions, personnel responsible for production and distribution had no feature film experience, an indication that successful marketing would be unlikely.[4]
 
 
 9
 CFA personnel did, however, have extensive experience in tax shelter syndication. The terms and price for acquisition of each motion picture were unilaterally set by CFA, the seller, without appraisal or reference to industry standards. The partnerships had no control over the quality, such as it was, of the finished films.
 
 
 10
 The Tax Court did not clearly err in its determination that the primary purpose of the partnerships in buying the film properties was to create tax shelters, not to profit. Respondent properly disallowed petitioners' expense deduction, depreciation, and investment credit claims.
 
 II. INTEREST EXPENSE DEDUCTIONS
 
 11
 Reasoning that the amounts of the nonrecourse notes executed by each partnership greatly exceeded the films' values, the Tax Court also held that petitioners' interest deductions were improper. We agree. See, e.g., Brannen, 722 F.2d at 701-02; Estate of Franklin v. Commissioner, 544 F.2d 1045, 1048-49 (9th Cir.1976).
 
 
 12
 Nonrecourse notes represented nearly three million dollars of the purchase price for the film properties. The partnerships never made payments on the notes. The Tax Court found that petitioners' evidence of fair market value was contradictory and that their expert was unqualified. 49 T.C.M. (CCH) at 1309. In contrast, the Tax Court credited two briefer expert reports introduced by the Commissioner.[5]
 
 
 13
 Petitioners had the opportunity but failed to introduce stronger, more pertinent evidence of value.[6] Petitioners failed to demonstrate that the debts were genuine.[7] See Independent Electric Supply, 781 F.2d at 727 (citing Hirsch, 315 F.2d at 738 (taxpayer has burden of showing that facts bring case squarely within deduction provisions; clearly erroneous standard applies)). The Tax Court's acceptance of the Commissioner's experts and rejection of the reports offered by petitioners was not clearly erroneous. Disallowance of petitioners' interest deductions was proper. Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960); Deegan v. Commissioner, 787 F.2d 825 (2d Cir.1986); Brannen, 722 F.2d at 701-02; Odend'hal v. Commissioner, 80 T.C. 588, 604-05 (1983), aff'd, 748 F.2d 908, 912 (4th Cir.1984), cert. denied, 471 U.S. 1143, 105 S.Ct. 3552, 86 L.Ed.2d 706; Narver v. Commissioner, 75 T.C. 53, 98 (1980), aff'd per curiam, 670 F.2d 855 (9th Cir.1982); 26 U.S.C. Sec. 163(a).CONCLUSION
 
 
 14
 The decision of the Tax Court is AFFIRMED.[8]
 
 
 
 [1]
 Petitioners must be engaged in a trade or business with an actual profit objective to qualify for deduction of ordinary and necessary expenses and depreciation. Hirsch v. Commissioner, 315 F.2d 731, 736 (9th Cir.1963); Internal Revenue Code, 26 U.S.C. Secs. 162(a), 167(a) & 183(a) & (c). Investment credits may only be taken for depreciable (or amortizable) property. 26 U.S.C. Secs. 38 & 48(a)(1)
 
 
 [2]
 Petitioners contend that the Tax Court has impermissibly altered its standards for examining profit motive by moving from a "basic" or "dominant" purpose test to one of "predominant," "principal," or "primary" purpose. We reject any significant distinction between these terms as used in decisions of this court and the Tax Court
 
 
 [3]
 The Seventh Circuit and several Tax Court decisions have also held that the issues of profit motive and the incurring of business expense must be resolved at the partnership level. Madison Gas & Elec. Co. v. Commissioner, 633 F.2d 512, 517 (7th Cir.1980); see Brannen, 722 F.2d at 703 n. 6 (citing cases)
 
 
 [4]
 Similarly, the partnerships planned to use the unconventional and relatively expensive "four-wall" method for film distribution, in which the distributor rents the exhibiting theaters and assumes all advertising costs and responsibilities. This approach entailed large initial costs and contributed to CFA's economic failure
 
 
 [5]
 Respondent's reports credibly concluded that $30,000, $62,500, $25,000, and $0 were the market values of films with stated purchase prices of $625,000, $1,425,000, $1,425,000, and $115,000, respectively
 
 
 [6]
 Much of petitioners' lengthy report is written with an improper standard in mind. The proper inquiry focuses on the market value of the films at the time the partnerships were formed. See Smith v. Commissioner, 78 T.C. 350, 392 n. 32 (1982) (subjective intent at time transaction was entered is determinative) (citing King v. United States, 545 F.2d 700, 709 (10th Cir.1976))
 
 
 [7]
 Consequently, the nonrecourse indebtedness cannot represent investment for purposes of determining depreciable adjusted basis. See generally Brannen, 722 F.2d 695; Estate of Franklin, 544 F.2d 1045; Narver v. Commissioner, 75 T.C. 53 (1980), aff'd per curiam, 670 F.2d 855 (9th Cir.1982)
 
 
 [8]
 Petitioners Steinhebel stipulated with the Commissioner to settle their claims before trial in the Tax Court, and have moved to dismiss their entire appeal. The motion is granted and their appeal is dismissed. Claims for Bakers, Ferreris, Teakles, Merricks, and Vinci concerning participation in the CFA Investors IV partnership were similarly settled before trial. Accordingly, we do not rule upon those settled claims