JOHN F. BLOCKER AND SARA A. BLOCKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blocker v. Commissioner
Docket No. 36049-87
United States Tax Court
T.C. Memo 1992-725; 1992 Tax Ct. Memo LEXIS 761; 64 T.C.M. (CCH) 1586; December 23, 1992, Filed Decision will be entered under Rule 155. For Petitioners: William E. Bailey. For Respondent: James R. Turton. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies of $ 11,469.92 for 1983 and $ 31,755 for 1984, and additions to tax and additional interest as follows: Additions to Tax and Additional Interest
Year
Sec. 6653
Sec. 6653
Sec. 6659
Sec. 6661
Sec. 6621(c)
(a)(1)(A) [1]
(a)(1)(B) [2]
1983
$   574.85
[3]
$   358.20
$ 2,575.75
$  1,194
1984
1,587.75
[3]
6,068.70
2,881.50
20,283
After concessions, the following issues remain to be decided: 1. Whether petitioners are entitled to travel *762 and entertainment expense deductions for 1983 and 1984. We hold they are not. 2. Whether petitioners may carry back losses from a factoring business in 1986. We hold they may not. 3. Whether petitioners may carry back losses from Willow Oaks partnership in 1986. We hold they may not. 4. Whether petitioners are liable for additions to tax for negligence for 1983 and 1984 under section 6653(a)(1) and (2), for substantial understatement of tax liability under section 6661, and for increased interest for substantial underpayments attributable to tax motivated transactions under section 6621(c). We hold that the entire deficiency is due to negligence and tax motivated transactions under section 6621(c). Respondent concedes the additions to tax under section 6659. Respondent also determined that petitioners were not entitled to deduct losses in 1983 and 1984 from R & D Associates Partnership and in 1984 from Nutest Associates Partnership. The parties agreed to be bound by the final decision in Agro Science Co. v. Commissioner, T.C. Memo. 1989-687, affd. 934 F.2d 573 (5th Cir. 1991). In that case we decided that the *763 Coral partnerships lacked an actual and honest profit objective and entered into the transactions solely for tax benefits. Accordingly, we sustain respondent's determination on this issue. References to petitioner in the singular are to John Blocker. All section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts are stipulated and are so found. 1. Petitioners
Petitioners were husband and wife during the years in issue. They resided in Dallas, Texas, when they filed the petition. Petitioners have a daughter named Allison. Petitioner sold tax shelters for a living. He sold interests in a tax shelter called Coral during 1983 and 1984. Petitioner told Coral clients that the ratio between tax benefits and funds invested was about eight to one. In Agro Science Co. v. Commissioner, supra, we found that Coral claimed deductions for interest paid on notes based on the Brazilian cruzeiro which was experiencing an annual inflation rate of about 65 percent and had no mechanism for monetary correction. We *764 found that Coral investors lacked profit motive, and held that they could not deduct any expenses associated with their purchase of the Coral tax shelter. See also United States v. Campbell, 897 F.2d 1317 (5th Cir. 1990), for a summary description of the Coral shelter. Petitioner prepared some income tax returns for clients in 1983 and operated Blocker & Co., a sole proprietorship, which performed bookkeeping and accounting services in 1983 and 1984. In 1986, petitioner worked for Hank Dickerson and Co. Later in 1986 he formed a factoring business called Cash Flow Accelerators, discussed below. 2. Travel and Entertainment
Petitioners incurred expenses in 1983 and 1984 that they claimed as deductions for business travel and entertainment expenses. Their records for these expenses were credit card receipts and other invoices which they later paid by check and entered on a general ledger. Petitioner prepared a schedule showing business entertainment expenses of $ 18,116 for 1983 and $ 12,677 for 1984. Petitioner attached to the schedule an invoice, credit card receipt, or other supporting document representing each claimed expenditure. In *765 most cases, he wrote the names of persons he claims to have entertained on the back of the invoices. However, petitioner did not write the names at the time of the expenditure. Most of the records provided by petitioners refer to payments to Chandlers Landing Yacht Club (yacht club). Petitioner deducted yacht club dues of $ 57 per month and all of petitioners' yacht club charges as travel and entertainment expenses. Yacht club employees recorded charges on food or beverage tickets on which they stated the date and the number of persons or guests, and described the food or beverage. Petitioner signed most of the tickets. Sara and Allison also signed some of them. The tickets signed by Allison were for items such as soft drinks, snow cones, milk, beef sticks, Shirley Temples, cookies, and chips. Allison signed two invoices dated June 19, 1983, for one person. Petitioner wrote "Jim Wilson, Jack Blocker, Sara Blocker" on the back of both of those invoices. On June 26, 1983, Allison signed two invoices. Petitioner wrote "Steve Leininges, Blocker" on the back of both of those invoices. On July 3, 1983, Allison signed an invoice for one person. Petitioner wrote "David Carrs, *766 Blocker" on both of those invoices. Also on July 3, 1983, Allison signed for one guest fee of $ 3. Petitioner wrote "Chris Nielsen (2), Jack Blocker, Sara Blocker" on the back of that invoice. On July 10, 1983, Allison signed two invoices for one person. Petitioner wrote, "R.J. McCarroll, Blocker" on the back of both invoices. On July 17, 1983, Allison signed an invoice. Petitioner wrote "David Hoover, Blocker" on the back of it. On August 21, 1983, Allison signed an invoice for a $ 2 cherry coke. Petitioner wrote "Bill Wrights, Al Stephens, Blocker" on the back of it. On September 11, 1983, Allison signed two invoices for one person. Petitioner wrote "R.J. McCarroll, Blocker" on the back of those invoices. Petitioner wrote the names of the following Coral commissioned salesmen on the backs of invoices: Chris Nielson, Louis Jackson, David Hoover, Al Stephens, Steve Blount, Copy Groom, Robert Harris, and David Lerner. Petitioner indicated on the summaries that he prepared that these salespersons were his clients; they were not. Petitioners went on a ski trip seminar in 1983. His expenses of $ 237.76 included attendee fees for two, sleigh rides for three, a dinner, and *767 car rental. Petitioners also traveled to the Cayman Islands and Puerta Vallarta, Mexico. Petitioner charged many of the expenses to his American Express account. Petitioner attributed many of these expenses to clients or potential clients in his summaries. However, the claimed clients included commissioned Coral salesmen, such as Chris Nielson, Louis Jackson, David Hoover, Al Stephens, Steve Blount, Copy Groom, and David Lerner. Petitioner went to England in 1983 and visited Coral facilities. Petitioner invested in Coral and sold interests in it. Besides Coral-related activities, the only other business reason that petitioner gave for his travel and entertainment expenses was to entertain his bookkeeping or accounting clients. Petitioner claimed few items related to bookkeeping clients compared to those for Coral. Petitioner's bookkeeping or accounting clients in 1983 and 1984 were Tom Alexander, Tom Nelson (also Coral related), Tom Peterson, R.J. McCarroll, and Ceil Ainsworth. Petitioner wrote on his summary for 1983 and 1984 travel and entertainment expenses attributable to Tom Alexander as follows: May 24, 1983
Sergios
$ 109.66
June 23, 1983
Pentagon Bar & Restaurant
27.00
October 28, 1983
Hotel Graza Blanca
560.01
October 28, 1983
Transpocar
144.38
April 2, 1984
Cafe Oceana
46.34
May 31, 1984
Cafe Oceana
52.46
August 9, 1984
Garza Blanca
1,260.00
August 16, 1984
Traveler's Checks
1,500.00
August 31, 1984
Cafe Oceana
48.43
September 28, 1984
Mexicana Airlines
993.00
October 5, 1984
Ric Taxco
116.87
October 5, 1984
Garza Blanca
701.69
October 31, 1984
Arrendadora De Alba
166.49
$ 5,726.33
*768 Most of these expenses were incurred at Puerta Vallarta, Mexico, or elsewhere in Mexico. 3. Petitioner's Factoring Business
Petitioner was the sole owner of a factoring business called Cash Flow Accelerators (CFA) which he founded around March 1986. A factoring business buys accounts receivable from other businesses at a discount. CFA generally bought accounts receivable of a client's customers for 80 percent of the face amount of the receivable. For example, CFA would purchase a $ 100 receivable from a factoring client for $ 80. The customer of the client would then pay CFA the $ 100. CFA also charged fees to its factoring clients depending on how quickly the customer paid CFA. Petitioner operated CFA as a sole proprietorship from March 1986 to about April or May 1986. CFA's only client during that time was R & F International, Inc. (R & F), a food seller in Delaware. All of the R & F accounts receivable were payable by an agency of the United States Government. Petitioner notified the agency that he had purchased the receivables. The agency paid petitioner for most of the R & F receivables, but sent some of the checks to R & F rather than to petitioner. On May *769 3, 1986, petitioner entered a partnership agreement with Bernard Kaye (Kaye) creating National Federal Factors (National). Petitioner contributed the CFA accounts receivable to National. On October 8, 1986, CFA sued R & F (R & F litigation). The record does not disclose the basis for the cause of action. The Commissioner had filed tax liens against R & F totaling $ 178,996.50 for delinquent payroll taxes for 1985 and 1986. Transamerica Financial Services of Dover, Inc., had obtained a $ 329,842.35 judgment against R & F and Hertz Truck Leasing, Inc., had obtained a $ 4,272.70 judgment against R & F. On September 3, 1987, CFA's motion for summary judgment was granted, subject to a $ 62,100 offset. In June 1987, First Republic Bank filed an involuntary petition in bankruptcy against National (National bankruptcy) for failure to pay its note obligations to the bank. At that time, National had about $ 600,000 in accounts receivable. 4. 1986 Willow Oaks Partnership Loss
In 1985, petitioner, Gary Marco, Carl Generes, Dick Shea, and Ted Troy (the Willow Oaks partners) formed a general partnership named Willow Oaks Partners (Willow Oaks) to invest in two real estate limited *770 partnerships, Willows Partners, Ltd. (Willows Partners) and Hidden Oaks Partners Ltd. (Hidden Oaks). Petitioner owned 22-1/2 percent of Willow Oaks. Willows Partners planned to buy an apartment complex in Houston, Texas. The Willows Partners' private placement memorandum states that the objective is long-term growth. It shows that an investment in the apartment complex involves a high degree of risk and little profit possibility over about an 8-year period. It projects profit potential and growth after that period. It also states that many apartment complexes in the Houston area had substantial vacancy rates at that time. The Willow Oaks partners, including petitioner, each executed personal liability promissory notes of $ 172,444 (the personal liability notes) in connection with their acquisition of Willow Oaks' interest in Willows Partners. Willows Partners had 29 partners. Willow Oaks had an 8.8132 percent profit interest in Willows Partners. Willow Oaks had a 27.338 percent interest in Hidden Oaks. Hidden Oaks had 13 partners. Hidden Oaks reported a $ 1,127,828 loss on its 1986 Federal partnership income tax return. Willow Oaks' share of this loss was $ 308,325.62. *771 Hidden Oaks reported in its 1986 partnership return that the partnership had $ 5.4 million in nonrecourse real estate loans, of which Willow Oaks' share was $ 1,476,252. The Commissioner received Willow Oaks' 1986 partnership return on June 18, 1987. On its 1986 return, Willow Oaks reported a $ 403,108 ordinary loss including $ 93,782.50 in 1986 partnership flow-through losses from Willows Partners and other partnership expenses of $ 1,600. The Willow Oaks 1986 partnership return included a Schedule K-1 which allocated $ 90,834 as petitioner's share of the claimed 1986 Willow Oaks partnership loss. Petitioners treated the loss as a partnership item and deducted it in their 1986 individual income tax return. The Schedule K-1 shows petitioner's capital account was $ 300 at the beginning of 1986 and no additions to his capital account that year. Willow Oaks had no profit to distribute in 1986. 5. Petitioners' Income Tax Returns
Petitioners filed a joint income tax return for 1983 on October 15, 1984, and for 1984 on October 18, 1985. Respondent mailed the notice of deficiency for 1983 and 1984 on August 6, 1987. Petitioners timely sent their petition by certified mail *772 to the Court where it was filed on November 9, 1987. Petitioners filed their joint income tax return for 1986 on December 2, 1987. Petitioners timely claimed a tentative refund on December 2, 1987, based on a $ 305,985 net operating loss carryback from 1986 to 1983, 1984, and 1985. 6. Petitioners' Bankruptcies
Petitioner filed a petition in bankruptcy under chapter 7 on August 31, 1988. Sara Blocker filed a petition in bankruptcy under chapter 7 on September 22, 1988. OPINION 1. Travel and Entertainment Deductions
Petitioners claimed travel and entertainment deductions for 1983 and 1984, all of which respondent disallowed. Respondent's determination is presumed to be correct, and petitioners bear the burden of proving otherwise. Rule 142(a). Respondent concedes that the only business travel and entertainment issue in dispute is petitioner's credibility. For reasons stated below, we conclude that petitioners have not met their burden of proof, partly because petitioner's testimony relating to his records is not credible. Petitioners introduced into evidence summaries of petitioner's travel and entertainment expenses and corresponding invoices or receipts *773 to support the claimed travel and entertainment deductions. Petitioner testified that there was a supporting document for each expenditure on the schedule and that he entered the names of persons entertained or the business purpose on the backs of most of the invoices or receipts. Petitioner testified that he made those entries at the time of each expenditure and that the names related to each expenditure. These documents contain many inconsistencies and improbabilities. Most of the receipts in evidence are from Chandlers Landing Yacht Club. There are many inconsistencies between the information written by petitioner on the back of the tickets and information written by club employees on the front. For example, club employees wrote the number of persons or guests on the front of the ticket. Inexplicably, the number of persons whose names petitioner wrote on the back of each ticket rarely coincides with the number on the front of the ticket. Petitioner testified that the yacht club tickets were all business expenses. His summaries include all of his yacht club charges. Yet, petitioner's daughter, Allison, signed many of the tickets. Most of Allison's charges were for items *774 like Shirley Temples and cookies. Petitioners do not explain why tickets signed by Allison were for business entertainment. We are not convinced that the handwritten information on the backs of the records is true and correct. For example, beverage ticket no. 17296 was signed by petitioner. Handwritten on the back is "R.J. Holub, Jack Blocker, Oil Investments". Petitioner testified that R.J. Holub was Coral-related. However, Coral was not involved with oil investments. On the backs of many yacht club tickets and American Express receipts petitioner wrote the names of Coral salesmen that he labeled on his summary as clients or potential clients. However, petitioner did not convince us that the Coral salesmen were clients or prospective clients. Because of the above inconsistencies, petitioner has not convinced us that he wrote the names on the backs of the tickets at the time of the expenditure. We do not believe that he entertained many of the persons named on the slips as claimed. In light of petitioner's unpersuasive testimony and his unreliable supporting documents, we do not accept his business purpose claims. The expenses of petitioner's trip to England to look at *775 the Coral facilities are a deductible business expense to the extent he establishes that his interest in Coral is as a promoter, but are not deductible to the extent his interest in Coral results from his investment in Coral. In Agro Science Co. v. Commissioner, T.C. Memo. 1989-687, affd. 934 F.2d 573 (5th Cir. 1991), we found that Coral investors lacked profit motive, and held that they could not deduct any expenses associated with their purchase of the Coral tax shelter. The record is unclear as to what extent petitioner's interest in Coral was due to his investment in Coral, as distinguished from his interest as a promoter of Coral. Petitioner did not give us any basis to allocate expenses of his London trip. Therefore, we make no allocation. We are not convinced that petitioner's testimony about the business nature of his yacht club and American Express records is correct. His lack of credibility casts doubt on the rest of his travel and entertainment deduction claims. We sustain respondent's determination disallowing petitioners' travel and entertainment deductions. 2. Bad Debt Deduction Net Operating Loss *776 Carryback from 1986
Petitioners argue that they are entitled to a net operating loss carryback of $ 305,985 under sections 166 and 172 from 1986 to 1983 and 1984 resulting from their share of R & F's bad debt purportedly owed to National. Petitioners allege that National is entitled to a $ 226,221.93 bad debt deduction in 1986 from accounts receivable purchased from R & F and that petitioner is entitled to all of the deduction. [1]
A taxpayer may deduct any bona fide debt which becomes worthless during the taxable year. Sec. 1.166-1(c), Income Tax Regs. A bona fide debt is one which arises from a debtor-creditor relationship based on a valid and enforceable obligation to repay a fixed or determinable *777 sum of money. Sec. 1.166-1(c), Income Tax Regs.
Petitioners argue that the bad debt arises from $ 226,221.93 owed to National by R & F, but provide no details about the claimed debt. CFA bought accounts receivable from R & F for factoring. Petitioner contributed the CFA accounts receivable to National when he formed the partnership with Kaye. Petitioner testified that the $ 221,221.93 represents his cost of purchasing the R & F accounts. We are not persuaded that this claim arises from a debtor-creditor relationship between National and R & F. Rather, it appears that petitioner seeks to recover what he paid to R & F to buy accounts for factoring. Petitioner testified about a law suit by CFA against R & F, but he did not describe the cause of action, introduce into evidence the complaint filed against R & F, or produce the contracts through which CFA or National purchased the accounts from R & F. The only document in evidence concerning the litigation is a copy of one page of the docket sheet which shows that CFA filed a suit against R & F on October 8, 1986, for an unspecified cause of action. Thus, we are unable to tell the basis for CFA's cause of action. The accounts *778 receivable were to be paid to National not by R & F, but by the United States Government. There is no evidence that any relationship or agreement between petitioner, National, or CFA and R & F existed, other than that of buyer and seller. The seller, R & F, sold the buyer, CFA, the receivables, most of which were paid by the United States Government. Petitioner has not convinced us that the relationship between National and R & F was debtor and creditor until after the court granted CFA's motion for summary judgment in the R & F litigation and judgment was ordered to be entered on July 14, 1987. Consequently, respondent's determination that petitioner is not entitled to any bad debt deduction in 1986 is sustained. Having found that petitioners failed to prove that a debt existed in 1986 between R & F and National, we need not reach respondent's contention that petitioners failed to prove that they had sufficient basis or that the debt became worthless in 1986. We also need not decide whether petitioner's distributive share of any National losses is limited to 50 percent because he was a 50-percent partner in National. 3. Willow Oaks, Nutest, and R & D
Petitioners deducted *779 1986 losses from Willow Oaks, and two Coral tax shelters, Nutest, and R & D, and carried the losses back to 1983 and 1984. As stated above, petitioner agreed to be bound by the final decision in Agro Science Co. v. Commissioner, supra, as to their Nutest and R & D partnership deductions for 1984. They have given no convincing reason to treat Nutest and R & D differently for 1986. Accordingly, petitioners may not carry back the claimed Nutest and R & D losses from 1986. We next consider petitioners' deductions relating to Willow Oaks partnership. a. Profit Motive
Respondent contends that petitioners failed to establish that their Willow Oaks investment was made with a profit motive. Petitioners argue that this is a new issue, and that respondent raised it too late. We disagree that profit motive is a new issue. Rather, it is one of the elements petitioner must prove to deduct the claimed losses. Since petitioners claimed the deduction, they must show that they meet all requirements to properly claim it. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Petitioners must show a profit motive. *780 Sec. 183. Because the activity was conducted by a partnership, this issue must be resolved at the partnership level, Taube v. Commissioner, 88 T.C. 464, 478 (1987); Flowers v. Commissioner, 80 T.C. 914, 932 (1983); Siegel v. Commissioner, 78 T.C. 659, 698 (1982); Brannen v. Commissioner, 78 T.C. 471, 505 (1982), affd. 722 F.2d 695 (11th Cir. 1984), as reflected in the intent of the general partner at the beginning of the transaction. Polakof v. Commissioner, 820 F.2d 321, 323 (9th Cir. 1987), affg. T.C. Memo. 1985-197; Taube v. Commissioner, supra at 480; Finoli v. Commissioner, 86 T.C. 697, 722 (1986). An activity not engaged in for profit is defined by section 183(c) as any activity other than one for which deductions are allowable under section 162 (relating to trade or business expenses) or section 212(1) or (2) (relating to expenses for the production or collection of income, or for the management, conservation, *781 or maintenance of property held for the production of income). In this context, profit means economic profit, independent of tax savings. Herrick v. Commissioner, 85 T.C. 237, 255 (1985); Seaman v. Commissioner, 84 T.C. 564, 588 (1985); Surloff v. Commissioner, 81 T.C. 210, 233 (1983). Whether the partnership had the requisite profit objective is an issue of fact to be decided on the basis of all of the facts and circumstances. Elliott v. Commissioner, 84 T.C. 227, 236 (1985), affd. without published opinion 782 F.2d 1027 (3d Cir. 1986); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs.
The only evidence relating to profit motive aside from petitioner's testimony is in Willow Partners' offering memorandum. We are not convinced by the contents of that memorandum that any of the partnerships had a profit motive. Consequently, we hold that petitioners have failed to carry their burden of *782 proving profit motive. Petitioners' reliance on Universal Research & Development Partnership No. 1 v. Commissioner, T.C. Memo. 1991-437, is misplaced. That case is distinguishable from this case; nor did Universal Research involve a situation where the taxpayers first claimed a net operating loss after the petition was filed. We hold that petitioners have failed to prove that the partnerships had a profit motive. b. Basis
Petitioners' distributive share of partnership losses may not exceed their basis in the partnership. Sec. 704(d). Generally, a taxpayer's basis includes his capital contributions and his share of partnership income and liabilities less distributions made to him and less his share of partnership losses. Sec. 705(a). Petitioners argue that their share of partnership liabilities establishes sufficient basis in the partnership to deduct the claimed losses. Petitioners argue that petitioner's basis consisted of his share of $ 1,846,406.40 of partnership liabilities consisting of nonrecourse real estate indebtedness from Willows Partners and Hidden Oaks. Petitioners argue that petitioner's share, based upon his 22-1/2 *783 percent ownership in Willow Oaks, was $ 415,441.44 before his distributive share of 1986 partnership losses in Willow Oaks. Petitioners also argue they had tax basis of an additional $ 19,799.90, which is petitioner's share of personal liability notes. Petitioners include nonrecourse partnership liabilities in their partnership basis. A nonrecourse liability may be included in the basis of partnership assets and a partner's basis in his partnership interest if the property owned by the partnership and held as security for repayment of the obligation has a fair market value greater than or equal to the liability. Sec. 752(c). Petitioners have failed to show the fair market value of the Hidden Oaks and Willow Oaks properties which were held as security for the nonrecourse liabilities. Accordingly, petitioners have not shown that they may rely upon the nonrecourse partnership liabilities for their basis. Petitioner testified that he had sufficient basis and prepared a summary document in an attempt to corroborate his claimed basis. We do not accord petitioner's testimony or his schedule much weight because it appears to be contrary to the partnership returns and is uncorroborated. *784 The only other evidence from which basis could be inferred is partnership returns. Willow Oaks' 1986 partnership return shows that petitioner's capital account was $ 300 at the beginning of 1986 and that the partnership suffered a loss during 1986. Similarly, Hidden Oaks' and Willow Oaks' income tax returns each contain a reconciliation of the partners' capital accounts in 1986. The Hidden Oaks' return shows that Willow Oaks had a negative capital account of $ 2,871 at the beginning of 1986. Hidden Oaks had ordinary loss of $ 124,061 and a capital account at the end of 1986 of a negative $ 311,197. Willows Partners' return shows that Willow Oaks had a positive beginning capital account of $ 149,402 for 1986. Willow Oaks had an ordinary loss of $ 93,782 in 1986 and an ending capital account of $ 55,620. These returns do not support petitioners' claim that they had sufficient basis to deduct the Willow Oaks losses. In addition, petitioner's credibility is questionable in light of his treatment of supporting documents for his business travel and entertainment claims. Consequently, we are not persuaded that petitioners have shown that they have sufficient basis to deduct the *785 Willow Oaks losses. Petitioners also argue that respondent is somehow barred by the statute of limitations from attacking their position about 1986, including basis, because the 1986 partnership returns for Willow Oaks, Willows Partners, and Hidden Oaks were timely filed. There is no assessment or collection for 1986 in this case. Instead, petitioners seek to carry back to 1983 and 1984 the deduction generated in 1986, and have placed only the former years in issue. It is undisputed that the years 1983 and 1984 are still open. Thus, petitioners' argument that the statute of limitations bars respondent from arguing that petitioners are not entitled to the carryback deductions is without merit. See section 6214(b); Hill v. Commissioner, 95 T.C. 439, 440-441 (1990); Mennuto v. Commissioner, 56 T.C. 910, 923 (1971). In light of our conclusions as to petitioners' failure to prove profit motive and adequate basis, we do not reach petitioners' argument that section 301.6231(c)-7T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987), does not apply where there has been no partnership *786 proceeding. 4. Additions to Tax for Negligence
Respondent determined additions to tax for negligence under section 6653(a). Section 6653(a) imposes an addition to tax for an underpayment due to negligence or intentional disregard of rules or regulations. Petitioners bear the burden of proving that they exercised due care. Rule 142(a); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner was a fairly sophisticated taxpayer. He was an accountant who sold tax shelters. He altered his records. He admitted that he knew the ratio between deductions and the funds invested for these tax shelters was eight to one. See McCrary v. Commissioner, 92 T.C. 827, 849-850 (1989), where in deciding whether to sustain respondent's determination that the addition to tax for negligence applies, we said in view of the obvious purpose of the arrangement, i.e., securing immediate tax benefits in excess of the amount paid, "no reasonable person would have trusted this scheme to work". As we held in Agro Science v. Commissioner, T.C. Memo. 1989-687, the investors knew that the Coral shelter was *787 sold primarily for tax purposes and that the Brazilian Cruzeiro was a rapidly declining currency. Petitioner could not reasonably expect respondent to believe his statements that he offered to support his claimed deductions when he included items such as Allison's cookies and Shirley Temples, entertainment of other Coral salespersons, and other inconsistencies between the front and back of petitioners' supporting documentation. Petitioners argue that they were not negligent because they relied on the advice of professionals such as Dr. McNally and Ronald Mancoff before investing in Coral. Good faith reliance on the advice of counsel or a qualified accountant can be, under certain circumstances, a defense to the addition to tax for negligence. United States v. Boyle, 469 U.S. 241, 250-251 (1985); Ewing v. Commissioner, 91 T.C. 396, 423 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Jackson v. Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989); Conlorez Corp. v. Commissioner, 51 T.C. 467, 475 (1968). *788 Petitioner testified that he spoke with his anesthesiologist friend, Dr. McNally, about Coral. There is no evidence that Dr. McNally was qualified to provide an opinion about Coral. Petitioners argue that they relied on Ronald Mancoff's support of their tax position regarding Coral. Petitioner saw a draft of a legal opinion by Mancoff. Petitioner said that he believed Mancoff was one of best tax attorneys in the Southwest. We are not persuaded that petitioner relied on Mancoff. Petitioner knew that Coral was a tax shelter. Petitioners have not persuaded us that their claimed reliance on others overcomes the presumed correctness of respondent's determination of negligence. Petitioners contend that they are not liable for the additions to tax for negligence under section 6653(a), substantial understatement of tax under section 6661, and additional interest for tax motivated transactions under section 6621(c) (citing Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408). The Heasley case is easily distinguishable from the present case. The Heasleys were unsophisticated taxpayers. Neither *789 of the Heasleys graduated from high school. They sought a financial consultant to help them invest. They followed the consultant's advice and invested in an energy leasing conservation program. They also hired a C.P.A. to prepare their income tax returns. The investment was unsuccessful. The Commissioner determined a deficiency and additions to tax for negligence, valuation overstatement, and substantial understatement, and additional interest for a tax motivated transaction. The Court of Appeals found that the taxpayers had a profit motive when they entered into the investment. The court considered the taxpayers' background and their efforts to seek assistance. The court held that the taxpayers were not liable for the additions to tax and interest. Petitioner's background as a return preparer, tax shelter salesman, and his general knowledge of business is considerably greater than the Heasleys. He did not rely upon independent professional advice, nor did he have a bona fide profit objective in making his investment in the Coral tax shelter. We hold that petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2). 5. Additional Interest *790 Under Section 6621(c) for Substantial Understatement of Tax
Respondent determined that petitioners are liable for additional interest on an underpayment attributable to a tax motivated transaction as defined in section 6621(c). Additional interest at the increased rate of 120 percent of the statutory rate imposed on underpayments is imposed on tax motivated transactions under section 6621(c) with respect to interest accruing after December 31, 1984, regardless of when the return was filed. The additional interest applies after December 31, 1984, even if the transaction was entered into before that date. Solowiejczyk v. Commissioner, 85 T.C. 552, 556 (1985), affd. without published opinion 795 F.2d 1005 (2d Cir. 1986). Respondent has conceded the adjustment for unreported gross receipts of $ 44,804 and contends that the remaining deficiency is tax motivated. Petitioners assert that they are not liable for additional interest under section 6621(c), again relying on Heasley v. Commissioner, supra. See Estate of Raney v. Commissioner, T.C. Memo. 1992-684 *791 (Heasley distinguished at length). As previously discussed, petitioners' reliance on the Heasley case is misplaced. We find that the adjustments resulting from petitioners' investment in Coral and their claimed travel and entertainment deductions were tax motivated under section 6621(c). Accordingly, additions to interest under section 6621(c) apply to those deficiencies. 6. Additions to Tax For Substantial Understatement Of Income Under Section 6661
Section 6661 authorizes an addition to tax when there is a substantial understatement of income tax in any given taxable year. Sec. 6661(a). The addition to tax is equal to 25 percent of the amount of any underpayment attributable to the substantial understatement. Sec. 6661(a). A substantial understatement exists if in any year the amount of the understatement exceeds the greater of 10 percent of the amount required to be shown on the return or $ 5,000. Sec. 6661(b)(1). An understatement, for purposes of this addition to tax, is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989); *792 Woods v. Commissioner, 91 T.C. 88, 94 (1988). If the taxpayer has substantial authority for his tax treatment of any item on the return, the understatement is reduced by the amount attributable thereto. Sec. 6661(b)(2)(B)(i). Similarly, the amount of the understatement is reduced for any item adequately disclosed either on the taxpayer's return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii); sec. 1.6661-4(b) and (c), Income Tax Regs.
Petitioners argue that, under section 6661(b)(3), a portion of the penalty does not apply to a valuation overstatement, and the penalty may be waived by respondent if the taxpayer shows reasonable cause for the understatement and that the taxpayer acted in good faith. Sec. 6661(c). Petitioners cite section 1.6661-6(b), Income Tax Regs., which indicates that reasonable cause and good faith may be shown where a taxpayer has an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer. Petitioners argue that it was an abuse of discretion by respondent not to waive the additions to tax under section 6661(c). We disagree. Petitioners *793 have failed to prove reasonable cause or a good faith misunderstanding, especially in light of petitioner's experience and background. Estate of Raney v. Commissioner, supra.Accordingly, we hold that petitioners are liable for additions to tax under section 6661(a). To reflect the foregoing and concessions, Decision will be entered under Rule 155. Footnotes
1. The correct statutory reference for this addition to tax for negligence for 1983 and 1984 is sec. 6653(a)(1)↩.
2. The correct statutory reference for this addition to tax for negligence for 1983 and 1984 is sec. 6653(a)(2)↩.
3. Fifty percent of the interest due on the underpayment attributable to negligence.↩
1. Both parties describe petitioners' net operating loss carryback claim as totaling $ 305,985 with $ 231,017 from National and $ 90,834 from Willow. Although the sum of $ 231,017 and $ 90,834 exceeds $ 305,985, neither party has explained why petitioners limit their net operating loss claim to the latter figure.↩