985 F.2d 574
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Edward STEINBRECHER, Petitioner-Appellant,
v.
COMMISSIONER INTERNAL REVENUE SERVICE, Respondent-Appellee.
JASMINE ASSOCIATES, LTD.; Nesmine Dev. Corp.; Tax Matters
Partner, Petitioners-Appellants,
v.
COMMISSIONER INTERNAL REVENUE SERVICE, Respondent-Appellee.
UVERSA LTD., INC., Petitioner-Appellant,
v.
COMMISSIONER INTERNAL REVENUE SERVICE, Respondent-Appellee.
 Nos. 90-70456, 90-70471 and 90-70472.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 2, 1991.
Submission Vacated Dec. 17, 1992.
Reargued and Submitted Feb. 6, 1992.
Decided Feb. 1, 1993.
 
 Appeal from a Decision of the United States Tax Court; Nos. 37873-86, 40729-86 and 17733-87.
 VACATED AND REMANDED.
 Before JAMES R. BROWNING, FLETCHER and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants Edward Steinbrecher ["Steinbrecher"], Jasmine Associates, Ltd. ["Jasmine"], and Uversa, Ltd. ["Uversa"] appeal from the Tax Court's decision affirming the Tax Commissioner's disallowance of certain deductions and imposing tax additions for substantial understatement of tax. They raise a variety of issues, the first of which is common to each of the appellants: whether or not the Tax Court correctly determined that they did not engage in the thoroughbred breeding business with the dominant motive of making a profit.
 
 
 3
 The Commissioner and Tax Court identified numerous elements of appellants' business activities as indicia of the fact that tax savings, not realization of profits, was their dominant motive. These elements include, inter alia, Malisos' minimal experience and lack of training in horse breeding and the allegedly excessive monthly rental payments incurred by appellants. Based upon its extensive review of their business activities, the Tax Court concluded that appellants' thoroughbred breeding activities were not conducted with a dominant profit-making motive. We will not reverse that finding unless we conclude that it is clearly erroneous. Polakof v. C.I.R., 820 F.2d 321, 323 (9th Cir.1987), cert. denied, 484 U.S. 1025 (1988).
 
 
 4
 The Commissioner's exclusive contention on the dominant motive issue both here and below is that appellants conducted their thoroughbred business activities with the dominant motive of producing tax savings rather than profits.[1] The Tax Court agreed: its disallowance of appellants' deductions was based solely on its conclusion that their activities were conducted with the "dominant motive" of producing tax savings. Because there can be but one dominant motive, the Tax Court's decision must stand or fall on that assessment.
 
 
 5
 We agree with the Commissioner and the Tax Court that appellants appear to have structured their business activities so as to maximize the tax savings resulting from their conduct. The fact is particularly evident in the deferral features of the rental obligations incurred by the appellants.[2] However, in the present case, that fact is not dispositive of the appellants' dominant motive for their business activities. We do not deal here with a situation where appellants' activities could never reasonably be expected to result in profit, and neither the Commissioner nor the Tax Court makes such a contention. Rather, the present case involves a speculative "gamble"--an attempt by the appellants to achieve potentially large profits by engaging in the inherently risky business of thoroughbred horse breeding.
 
 
 6
 In such a case--where profits are admittedly possible (though perhaps uncertain or even unlikely)--the fact that a taxpayer's business activities are structured so as to minimize tax liability (or, put another way, so as to maximize tax savings) is substantially less indicative of the taxpayer's dominant profit motive than in a case in which profit realization is practically impossible. In the latter case, these features strongly indicate that tax savings, not profits, were the taxpayer's dominant motive. Not so, however, here. Tax-reduction features result in relative tax savings even when a business is designed to realize or actually realizes profits. Thus, even taxpayers with a dominant motive of profit realization would employ such tax-limiting devices. Indeed, the vast majority of "legitimate" business transactions are structured in such a fashion. Rational business people should be expected to minimize their tax liability even if profits are expected, or, indeed, certain.[3]
 
 
 7
 The determination of the dominant motive is frequently difficult, and we give the Tax Court's finding great deference. Nevertheless, a basic component of any determination that a given business was conducted without a dominant profit-making motive necessarily is a finding that the business was conducted for some other purpose. The Tax Court here made precisely such a finding: it concluded that appellants' thoroughbred breeding activities were conducted primarily in order to reduce their tax liability rather than to make a profit. We are required to determine whether that finding is adequately supported. We conclude that it is not.
 
 
 8
 The Tax Court supported its conclusion by identifying, correctly, a variety of features of the various transactions that were designed to reduce resulting tax liability. However, as noted supra, such support is by itself an inadequate basis for such a conclusion. It fails to distinguish appellants' activities from those businesses conducted with a dominant profit-making motive that legitimately structure their transactions in a similar fashion.
 
 
 9
 We will uphold a finding of a dominant non-profit making motive only if the record reflects that the motive imputed by the Tax Court makes sense.[4] Here, the sole non-profit motive found by the Tax Court was appellants' desire for tax savings.[5] In order to support a finding of such a dominant motive, the record must reflect that the tax savings the taxpayer expected to gain as a result of his business activities could be greater than the real economic losses he might reasonably have expected to incur.[6]
 
 
 10
 Such a requirement is easily, and has often been, satisfied. See, e.g., Skeen v. C.I.R., 864 F.2d 93, 95 (9th Cir.1989) (noting that each dollar invested by the taxpayers resulted in six dollars of tax savings). However, the Tax Court made no such showing in support of its conclusion here. The parties agree that each of the appellants contributed substantial sums in "up front" cash funds (as well as undertook other obligations) in order to initiate thoroughbred breeding operations. At oral argument, the parties hotly disputed whether the tax savings expected by the appellants were greater than their initial (and ongoing) real economic losses. Appellants contended that, at the very least, an after-tax interest rate of over 15% would have been required in order to result in tax savings sufficient to compensate appellants for their "real" out-of-pocket economic losses. In response, the Commissioner attempted to indict appellants' calculations and asserted that, in any case, interest rates during the relevant period might have been sufficient to satisfy appellants' requirements. However, neither appellants nor the Commissioner supported their positions by expert testimony or directly-relevant evidence in the Tax Court, nor did the Tax Court itself make findings in that regard.
 
 
 11
 The Tax Court's conclusion that appellants' business activities had the dominant motive of producing tax savings thus is not sufficiently supported by its findings, and the record fails to demonstrate that such a conclusion "makes sense". That is not to say that the appellants have met their burden of establishing their dominant profit-making motive[7] or that it is impossible for the Tax Court to support its conclusion on remand. Given the complexity of the issue and the inadequacy of the record, we remand the case to the Tax Court for a determination of whether appellants' business activities realistically could have been expected to result in tax savings greater than the economic losses that might reasonably have been anticipated. The Tax Court may, in its discretion, request supplemental briefing and adduce additional evidence on that question as well as upon any other matters it deems desirable. The Tax Court shall reconsider its findings and issue a written decision regarding its conclusions.[8]
 
 VACATED AND REMANDED
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Unlike some other thoroughbred ownership tax cases, there is no contention in the present action that appellants engaged in the activities at issue here for the recreational or other psychic or "prestige" benefits of thoroughbred horse ownership. Nor were the transactions designed to improperly transfer money to a particular recipient. The Commissioner conceded at oral argument that Hill & Dale and Uversa were unrelated and that their business transactions were at "arms length"
 
 
 [2]
 To the Commissioner, that feature is "the engine that drove" appellants' activities
 
 
 [3]
 The Commissioner does not argue that the tax deferral scheme adopted by appellants is per se illegal or otherwise prohibited by regulation
 
 
 [4]
 The requirement that the allegedly improper motive "make sense" before such a motive may be imputed is common in a variety of legal fields. See, e.g., Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-93 (1986) (holding that proof of predatory pricing requires evidence that such conduct "made economic sense"--that the benefits expected from the conduct outweighed the expected costs)
 
 
 [5]
 Where the non-profit-making motive is not economic, but instead relies upon benefits such as recreation or prestige, the requirement that the Tax Court's conclusion, at a minimum, "make sense" may take into account the non-rational nature of the benefits received by the taxpayer. For example, were the Tax Court to conclude that a taxpayer had lost over one million dollars in the thoroughbred breeding business merely for the recreational and other psychic benefits of participation in such an activity, it need not establish that a "rational" individual in the taxpayer's situation would pay such sums for these benefits: it need only establish a sufficient basis upon which to support its conclusion that the taxpayer indeed did so
 
 
 [6]
 Such a showing could not be made, for example, were a taxpayer to contribute $10,000 in cash to a business that would be expected to result at most in $8,000 worth of tax savings. Under such circumstances, it would be irrational for the taxpayer to give up $10,000 in order to obtain tax savings of only $8,000: he would lose $2,000 in the transaction
 
 
 [7]
 Howard v. C.I.R., 931 F.2d 578, 581 (9th Cir.1991); Skeen, 864 F.2d at 94; Polakof, 820 F.2d at 323
 
 
 [8]
 Because the Tax Court's decision on remand may obviate our need to examine the other issues raised by the appellants on appeal, we decline to reach those issues at the present time