T.C. Memo. 1998-217

UNITED STATES TAX COURT

ST. ELMO H. NAUMAN, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10661-96.                      Filed June 22, 1998.

St. Elmo H. Nauman, Jr., pro se.

<u>Michael H. Salama</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3)[1] and Rules 180, 181, and 182.  Respondent determined a deficiency in petitioner's 1993

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Federal income tax in the amount of $4,256 and an addition to tax of $400 pursuant to section 6651(a)(1).

The issues for decision are: (1) Whether petitioner was engaged in a trade or business during 1993; if so (2) whether petitioner substantiated certain expenses relating to the trade or business; and (3) whether petitioner is liable for the delinquency addition to tax.

FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed his petition, petitioner resided in El Toro, California.

During 1993, petitioner worked for the Immigration and Naturalization Service (INS) in the asylum office as one who interviewed refugees who come to the United States. Petitioner also worked as a part-time professor at Chapman University (Chapman) teaching classes in philosophy and religion and as a chaplain for the United States Navy (the Navy), lecturing and performing religious services. Petitioner is an ordained minister of the United Church of Christ and has been for the past 40 years.

Before 1993 and over the course of his career, petitioner worked in many different capacities, including working as a professor at different colleges and universities, working on

various assignments for the Navy several times per year, and working for a publishing company developing manuscripts for publication.

Petitioner is also a published author. Between 1971 and 1983, petitioner published at least three reference books.[2] Petitioner received about $1,000 for his work on his last book in 1983. Since then, petitioner has written manuscripts on philosophy, religion, logic, and politics, but none of them have been published. Petitioner submitted one manuscript for publication, but it was not accepted. None of his other manuscripts were submitted for publication. Petitioner believed that he had difficulty getting his books published because he was unable to reestablish a publishing contact, after his previous contact passed away in 1983 or 1984.

During 1993, in addition to the above activities, petitioner worked with a company called Professional Foreclosure Services (PFS) on a project "to acquire real estate for the purpose of providing a place for people who were recovering alcoholics or who were battered women". Petitioner envisioned that he could raise enough money to purchase real estate and establish a homeless shelter. Petitioner's arrangement with PFS was that it was to purchase and maintain the property and petitioner was to

---

[2] The titles of these books are The New Dictionary of Existentialism, Dictionary of American Philosophy, and Exorcism Through the Ages.

provide counseling and other services to the homeless for a fee. Petitioner attempted to raise money through mailings and meetings.

As it turned out, petitioner was unable to raise the money, and his idea never materialized. Petitioner worked an unspecified number of Saturdays and Sundays, but he did not receive compensation for his services.

Petitioner used his car to commute from home to his various places of employment and other locations. Petitioner submitted a handwritten mileage log reflecting the dates he drove, where he drove, and the exact odometer reading at the beginning of each trip. Petitioner recompiled this log around the time he was audited, using a spiral calendar and a small notebook in which he had contemporaneously logged his mileage information. Petitioner submitted neither the calendar nor the notebook into evidence. The log shows that petitioner traveled to his Navy chaplain's duties, to bookstores, to church meetings, to his INS office, to the library, and to PFS's office. The log indicates that petitioner drove 20,617 miles during 1993, of which he asserts that 12,157 (about 59 percent) were business use miles.

Petitioner submitted a "Library List" and photographs that reflect a sample of the 6,000 books that he purportedly has in his personal library. These books, purchased over the past 20 years, are on the topics of philosophy, theology, religion, and

general information and allegedly were used for lecturing purposes.

Petitioner worked about 40 hours per week for the INS, 10 hours per week teaching at Chapman, 5 hours per week on other lecturing activity, and an undeterminable amount of time on his real estate project. Petitioner wrote during his remaining free time. Other than the spiral calendar and small notebook previously mentioned, petitioner did not maintain books or records for any of his activities.

On his Schedule C for 1993, petitioner listed his principal business or profession as "Religion" and reported no income from that activity, but claimed the following expenses:

| Expenses | Amount |
| --- | --- |
| Car & truck | $4,695 |
| Depreciation | 9,320 |
| Office | 851 |
| Travel | 266 |
| Meals | 88 |
| Total | 15,220 |

Petitioner's car and truck expense deduction is based on the mileage driven for commuting from home to the various places listed in the log. Petitioner's depreciation deduction is for "Professional books and equipment", of which $8,000 relates to depreciation on 6,400 books with a purported $160,000 purchase price and $1,320 relates to depreciation on various office equipment, such as desks, bookcases, filing cabinets, furniture,

and computers. Petitioner's travel and meal deductions are for the cost of overnight meals and lodging while he performed work for the Navy. In addition, petitioner reported wage income of $54,507[3] and nontaxable pension income of $4,627. Petitioner claimed a $3,700 standard deduction.

Petitioner filed his 1993 Federal tax return on June 13, 1994. Petitioner testified that he did not file his return on time because he was busy working extra hours for the INS during an immigration crisis. Petitioner did not file a Form 4868 with the Internal Revenue Service, requesting an automatic extension to file his return.

In the notice of deficiency, respondent disallowed all of the expenses. Respondent has conceded that petitioner has verified expenditures for office, travel, and meal expenses. Respondent, however, asserts that deductions relating to "Professional books and equipment" and the business use of the automobile have not been substantiated. Respondent also determined that petitioner is liable for the section 6651(a) addition to tax.

---

[3] Petitioner received the following Form W-2 wage income:

| Entity | Amount |
| --- | --- |
| Department of Justice (INS) | $42,588.92 |
| Defense Finance and Accounting Service | 7,126.44 |
| Chapman University | 3,000.00 |
| Persupp Det Camp Pendleton | 1,792.52 |

OPINION

Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  To be engaged in a trade or business within the meaning of section 162, "the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit."  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

Petitioner asserts that, during 1993, he was engaged in the trade or business of writing on the topics of religion and philosophy, of working towards creating a homeless shelter, and/or of being a lecturer/teacher.  Respondent asserts that petitioner was not engaged in any such business activities during 1993 except as an employee, and that he was writing for "mere personal enjoyment".  We agree with respondent.

With respect to petitioner's lecturing/teaching activities, the only remuneration received by him was Form W-2 wage income from the INS, Chapman University, and the Navy.  We find that petitioner did not perform teaching or lecturing activity separate and apart from this employment.  Clearly, petitioner is not entitled to Schedule C deductions for expenses relating to wage income.  It is possible that petitioner is entitled to a Schedule A employee business expense deduction for overnight

lodging and meals expenditures, but he has already claimed a $3,700 standard deduction, and any resulting itemized deduction, after taking into consideration the 2-percent floor of section 67, would not exceed that amount.[4]

With respect to petitioner's homeless shelter activity, we conclude that, during 1993, petitioner was not engaged in that activity with sufficient continuity and regularity for us to find that he was carrying on a trade or business. In short, petitioner had a business idea that never materialized. Petitioner did not receive any compensation or income for his efforts. In fact, petitioner did not even demonstrate a source from which he could possibly be compensated. We find it unlikely that those persons in need of a homeless shelter would have funds to pay for his counseling service.

With respect to petitioner's writing activity, in order for him to deduct expenses of an activity pursuant to section 162, he must prove that profit was the primary or dominant purpose for engaging in the activity. Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212; Polakof v. Commissioner, 820 F.2d 321 (9th Cir. 1987), affg. per curiam T.C.

---

[4] We note that petitioner is not entitled to the claimed miles, as they represent travel between petitioner's home and places of employment. The cost of commuting to work, regardless of distance traveled, is a nondeductible personal expense. Heuer v. Commissioner, 32 T.C. 947 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960).

Memo. 1985-197; Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472; Carter v. Commissioner, 645 F.2d 784, 786 (9th Cir. 1981), affg. T.C. Memo. 1978-202; Hirsch v. Commissioner, 315 F.2d 731, 736 (9th Cir. 1963), affg. T.C. Memo. 1961-256; see also Snyder v. United States, 674 F.2d 1359 (10th Cir. 1982). Whether petitioner had the requisite profit objective is a question of fact to be resolved from all relevant facts and circumstances. E.g., Drobny v. Commissioner, 86 T.C. 1326, 1341 (1986), affd. 113 F.3d 670 (7th Cir. 1997); sec. 1.183-2(b), Income Tax Regs. Profit in this context means economic profit independent of tax savings. E.g., Antonides v. Commissioner, 91 T.C. 686, 694 (1988), affd. 893 F.2d 656 (4th Cir. 1990). The burden of proving a profit objective rests with petitioner. Rule 142(a); e.g., Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986).

Section 1.183-2(b), Income Tax Regs., provides a non-exclusive list of factors we consider to determine whether a taxpayer engaged in the venture with a profit objective. They include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer

in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits that are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor is controlling, and we do not reach our decision by merely counting the factors that support each party's position. Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(b), Income Tax Regs. Certain elements are given more weight than others because they are more meaningfully applied to the facts in our case.

Upon reviewing the record, we conclude that, during 1993, petitioner did not engage in the writing activity with the requisite profit objective. Petitioner did not carry on this activity in a businesslike manner, as he did not maintain any books and records. See sec. 1.183-2(b)(1), Income Tax Regs. Moreover, since 1983, petitioner submitted only one manuscript for publication and earned no income from his writing activity. In addition, petitioner did not demonstrate that he changed his operation to improve profitability, had a business plan, or investigated the basic factors that affect profitability.

Lastly, petitioner had sufficient income from his INS, Chapman, and Navy work to use the claimed tax benefits created from his writing activity. See sec. 1.183-2(b)(8), Income Tax

Regs.  While we do not believe that petitioner's income was so high as to make tax savings his primary objective, we recognize that petitioner may have sought after-tax savings as a way to subsidize his writing activity.  It is obvious that petitioner enjoyed writing, although the presence of personal enjoyment from an activity does not, by itself, establish a lack of profit objective.  See sec. 1.183-2(b)(9), Income Tax Regs.

In sum, "The gratification derived from an occupation worth doing, possibly beneficial to others and probably requiring long hours or arduous labor, must still not be confused with an intention to return a profit."  White v. Commissioner, 23 T.C. 90, 94 (1954), affd. per curiam 227 F.2d 779 (6th Cir. 1955).  Accordingly, we hold that petitioner is not entitled to deductions under section 162(a) with respect to any of his activities.  Having held that none of petitioner's activities is to be treated as a trade or business apart from his employment, we need not address the issue of whether petitioner's expenses were adequately substantiated.

Addition to Tax

Section 6651(a)(1) imposes an addition to tax of up to 25 percent of the underpayment for failure to file a timely Federal income tax return unless the taxpayer shows that the failure was due to reasonable cause and not willful neglect.  United States v. Boyle, 469 U.S. 241, 245 (1985).  To prove "reasonable cause",

the taxpayer must show that he exercised ordinary business care and was nevertheless unable to file the return within the prescribed time.  Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioner asserts that his unusually busy work schedule around the time his return was due created reasonable cause for filing his tax return about 2 months late.  We disagree.  The fact that petitioner was busy with employment or other activities is not reasonable cause for failure to timely file a return. Dustin v. Commissioner, 467 F.2d 47, 50 (9th Cir. 1972), affg. 53 T.C. 491 (1969).  Moreover, petitioner's assertion does not explain why he did not request an automatic extension for filing his return.  Accordingly, we sustain respondent on this issue.

To reflect the foregoing,

Decision will be entered
for respondent.