931 F.2d 578
 67 A.F.T.R.2d 91-918, 91-1 USTC P 50,210
 Howard S. HOWARD and Anne F. Howard; Ray Warner, Jr.;
Roger W. Franzen; Robert W. Lindner and Carole Lindner;
Paul A. Rittenhouse and Ann M. Rittenhouse; Andrew C.
Bambeck and Nancy A. Bambeck; Martin J. Gould and Gloria H.
Gould; Jerome L. Grosvenor and Danna B. Grosvenor,
Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 90-70028.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 18, 1991.
Decided April 26, 1991.
 
 G. Alohawiwoole Altman, Hilo, Hawaii, for petitioners-appellants.
 Shirley Peterson, Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.
 Appeal from a Decision of the United States Tax Court.
 Before TANG and NOONAN, Jr., Circuit Judges, and SHUBB,* District Judge.
 NOONAN, Circuit Judge:
 
 
 1
 Howard S. and Anne F. Howard; Ray Warner, Jr.; Roger W. Franzen; Robert W. and Carole Lindner; Paul A. and Ann M. Rittenhouse; Andrew C. and Nancy A. Bambeck; Martin J. and Gloria H. Gould; and Jerome L. and Danna B. Grosvenor jointly appeal decisions of the United States Tax Court. We affirm.
 
 FACTS
 
 2
 The facts have been set out in detail by the Tax Court in its opinion, 56 TCM 669 (1988). We here summarize the most relevant:
 
 
 3
 In 1980 and 1981 Midas International Inc. (MII) offered an investment program called Uranium for Tax Dollars, selling an investment in the Bolivar mining claims in New Mexico. Investors were offered a mineral claims lease on two acres for $5,000 for a period of 15 years. A second document given the investor to sign authorized a representative of MII to arrange for the sale of a five-year option to acquire all of the investor's right, title and interest, subject to a royalty reservation, for $20,000. The agent was authorized to apply $20,000 from the sale of the option, plus the $5,000 from the investor, to pay for mine development work on the investor's tract. It was agreed that if such an option could not be arranged within seven days the investor's check would be returned.
 
 
 4
 The investor was instructed by the promoter that he could deduct from taxable income the $5,000 paid for the lease and also the $20,000 the investor received from the sale of the option. Promotional material emphasized this large deduction, stating for example:
 
 
 5
 TO: 1980 TAXPAYER
FROM: ENERGY RESOURCE
 GROUP
SUBJECT: 500% TAX WRITE OFF (No
 Loans No Notes)
1980 has arrived and we are able to provide you with a tax shelter program in
 New Mexico, U.S.A.
----------
 Accompanying the promotional material were these instructions:
INSTRUCTIONS
DETERMINE TAX DEDUCTION
The minimum capital requirement is $5,000 which can result in a $25,000 tax
 write-off or 5 times the cash you invest. The capital requirement can be
 increased in increments of $5,000. The following chart correlates cash
 requirement to tax write-off (deductible expenses) to cubic meters to be
 mined under your Mineral Claim Lease Agreement.
 TOTAL
 CUBIC
YOUR CASH DESIRED TAX WRITE OFF DEVELOPMENT METERS IN
 (Deductible Expenses) COST PER M3 CLAIM
$ 5,000 x 5 = $25,000 divided by $1.25 = 20,000
 10,000 x 5 = 50,000 " " 1.25 = 40,000
 15,000 x 5 = 75,000 " " 1.25 = 60,000
 20,000 x 5 = 100,000 " " 1.25 = 80,000
 25,000 x 5 = 125,000 " " 1.25 = 100,000
 30,000 x 5 = 150,000 " " 1.25 = 120,000
 35,000 x 5 = 175,000 " " 1.25 = 140,000
 40,000 x 5 = 200,000 " " 1.25 = 160,000
 45,000 x 5 = 225,000 " " 1.25 = 180,000
 50,000 x 5 = 250,000 " " 1.25 = 200,000
----------
 
 
 6
 The program for 1981 had slightly different figures but in all essentials was similar to 1980. The investors (except Howard) claimed the deductions offered; at the same time they did not report as income the sums allegedly received from the sales of the options in 1980 and 1981.
 
 
 7
 The taxpayers whose appeal we adjudicate all testified that they were motivated by profit. They were all persons whose education and experience were such as to qualify them to make a sophisticated judgment about their investment.
 
 PROCEEDINGS
 
 8
 The Commissioner disallowed the deductions claimed on the basis of the program, added the proceeds of the option sales to income, and further determined that the taxpayers involved were liable for the penalty for negligence and liable for additional interest for substantial underpayments attributable to tax motivated transactions.
 
 
 9
 The taxpayers sought redetermination of the deficiencies and the penalties by petitioning the Tax Court. Over 300 cases presented the same issues. Substantially all of the parties in these cases agreed to be bound by the outcome of test cases. Thirteen cases were selected as test cases and were consolidated for purposes of trial, briefing, and opinion.
 
 THE OPINION OF THE TAX COURT
 
 10
 The Tax Court found that the centerpiece of the program was "the amount purportedly generated by the sale of the option and then supposedly used to develop the investor's mineral claim." The Tax Court found the option sale was "purely fictitious and designed solely to create an artificial development cost." The Tax Court found that the taxpayers did not report any income from the purported sale of the options and that the purported recipient of the development money never accounted to the taxpayers for any amount received. The Tax Court found that the transactions were "utterly devoid of economic substance." The Tax Court concluded that the transactions "were entered into by petitioners solely for tax benefits."
 
 
 11
 The Tax Court held that it would not be useful to discuss separately all of the individual cases. In a holding applicable to all the taxpayers the Tax Court declared: "We find it inconceivable that any prudent individual would really believe that their agent, chosen by the promoter, could assuredly and routinely sell a uranium option to each and every mining claim lease in the Uranium for Tax Dollars program within seven days.... The commercial surrealism of these transactions should have alerted a reasonable person to the chimerical nature of the uranium mining venture in New Mexico."
 
 
 12
 Individual decisions were entered assessing the deficiencies and penalties. The Tax Court found that the option proceeds should not be treated as income in 1980 and 1981 because the option sales were fictitious and no sales ever took place. The Tax Court further determined that no deficiency existed as to the Howards because they had not taken the deduction. The Tax Court held all of the others were liable for deficiencies and for the penalty assessed under Internal Revenue Code Sec. 6653(a)(1) and (2) for negligence; and that Ray Warner, Jr., Robert and Carole Lindner, Roger W. Franzen, Paul and Ann Rittenhouse, Andrew and Nancy Bambeck, Martin J. and Gloria H. Gould, and Jerome L. and Danna B. Grosvenor were also liable under Internal Revenue Code Sec. 6621(c) for 50 percent of the interest due on the underpayments of taxes in a "tax motivated transaction."
 
 
 13
 The taxpayers who are parties to this appeal appealed from the decisions of the Tax Court but only as to the assessment of additions for negligence and increased interest. There is no appeal from the Tax Court's determination of deficiencies determined on the grounds that the transactions were entered into solely for tax benefit.
 
 ANALYSIS
 Jurisdiction
 
 14
 The Howards. No deficiency or penalty was assessed against the Howards. Consequently, there is nothing for them to appeal. Their appeal is dismissed.
 
 
 15
 The Joint Appeal of the Seven Other Taxpayers. The seven other taxpayers, together with the Howards, filed a joint notice of appeal. Their case is essentially different from Davies v. Commissioner, 715 F.2d 435 (9th Cir.1983). There, six cases had been consolidated in the Tax Court. One taxpayer timely appealed. The other five taxpayers filed late and argued that the timely appeal saved the jurisdiction of this court. We held that jurisdiction was lacking as to the five because their appeal was not timely. In the present case all of the taxpayers appealed together within the 90 days allowed by law. 26 U.S.C. Sec. 7483.
 
 The Penalties Assessed
 
 16
 The appeal of the seven taxpayers focuses on the failure of the Tax Court to deal with their individual motivation. The Tax Court explicitly ruled that it would not be useful to consider individual circumstances and explicitly phrased its conclusions in terms of what a "prudent" or "reasonable" person would have done. The taxpayers contend that the motivation of each individual should have been considered, case by case. The law governing the determination of a deficiency because an investment was entered into without the primary motivation of profit has been succinctly stated in Skeen v. Commissioner, 864 F.2d 93, 94-95 (9th Cir.1989):
 
 
 17
 The proper focus of the test to be applied here is the taxpayer's subjective intent. Independent Elec. Supply [v. C.I.R.], 781 F.2d at 726 [ (9th Cir.1986) ]. However, objective indicia may be used to establish that intent. Id.; 26 C.F.R. Sec. 1.183-2 (1988). The burden of proving the requisite profit motive is on the taxpayer. Polakof v. Commissioner, 820 F.2d 321, 323 (9th Cir.1987) cert. denied, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988).
 
 
 18
 The taxpayers, however, have not appealed the deficiencies determined on the ground that they did not engage in transactions with the primary purpose of profit. They, therefore, are in great difficulty in maintaining their appeal on the issues of negligence and underpayment on a tax-motivated transaction. It is more difficult to prove subjective motivation than to prove what would motivate a reasonably prudent person. It is conceivable that one of these individuals would have been motivated in a way a reasonably prudent person would not. When the individuals are found to have acted for tax purposes, a fortiori a reasonably prudent person would be so found. The Tax Court has held that no reasonably prudent person would have undertaken these transactions for profit and that these individual taxpayers were not so motivated. These holdings of the Tax Court, which are not appealed as to the determination of deficiency, preclude the petitioners from appealing the assessment for negligence.
 
 
 19
 As far as negligence is concerned, the standard is objective. The Commissioner's determination of negligence is presumed to be correct. The taxpayer must show due care. Hansen v. Commissioner, 820 F.2d 1464 (9th Cir.1987). In a case such as this where the taxpayers have been found to have entered into sham transactions without a primary profit motivation, they have failed to meet their burden of showing due care. No reasonably prudent person would have acted as they did. The penalties for negligence under IRC Sec. 6653(a)(1) and (2) are appropriate.
 
 
 20
 Appellants further contend that the negligence penalty was wrongly upheld because they justifiably relied on the advice of financial advisors in entering into the disputed transaction. Good faith reliance on professional advice concerning tax laws is a defense. United States v. Boyle, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985); Collins v. Comm., 857 F.2d 1383 (9th Cir.1988). We need not determine whether the appellants relied on their advisors, because the district court found that "[t]here is no reliable evidence in the record suggesting the exact nature of the advice, if any, obtained." A review of the testimony supports this finding. Where no reliable evidence exists in the record suggesting the nature of any advice given, a finding of negligence is not erroneous. Skeen v. Comm., 864 F.2d 93, 96 (9th Cir.1989).
 
 
 21
 The taxpayers are not in a better position as to the appeal against the penalty assessed under Sec. 6621(c). The penalty applies to a "substantial underpayment" attributable to a "tax motivated transaction." The relevant definition of a tax motivated transaction is "any sham or fraudulent transaction." Sec. 6621(c)(3)(A)(v). The Tax Court has found the option sale to be sham. The taxpayers have not appealed this finding. Now they are bound by it.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation