WILLIAM O. JOHNSON AND KAREN JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 9772-91
United States Tax Court
T.C. Memo 1993-530; 1993 Tax Ct. Memo LEXIS 543; 66 T.C.M. (CCH) 1323; November 17, 1993, Filed *543 Decision will be entered under Rule 155. For petitioner: Douglas K. Cook. For respondent: Andrew Horning. WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined a deficiency in and additions to petitioners' Federal income tax as follows: Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)(A)
6653(a)(1)(B)
6661(a)
1987
$ 21,520
$ 1,076
[1]
$ 5,380
All statutory references are to the Internal Revenue Code in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All references to petitioner in the singular are to William O. Johnson. The deficiency is based on petitioners' failure to report and pay alternative minimum tax (AMT). Respondent computed petitioners' AMT by increasing taxable income as a result of the following adjustments: Personal exemptions
$  7,600
Miscellaneous itemized deductions
90,916
Taxes
24,766
Net personal interest
3,194
Other adjustments
18,831
Petitioners contest only the adjustment pertaining to the miscellaneous itemized deductions. This adjustment is comprised entirely of unreimbursed *544 employee business expenses (unreimbursed expenses). The issues for consideration are: (1) Whether petitioner's unreimbursed expenses are an adjustment in computing alternative minimum tax. The answer depends upon whether petitioner was an employee or independent contractor of Hill-Rom Co., Inc. (Hill-Rom). For the reasons discussed herein, we hold that petitioner was an employee of Hill-Rom. (2) Whether petitioners are liable for additions to tax for negligence under section 6653(a)(1)(A) and (B). We hold that they are not. (3) Whether petitioners are liable for additions to tax for a substantial understatement of income tax under section 6661. We hold that they are not. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein. Petitioners resided in Scottsdale, Arizona, at the time the petition was filed. Petitioner was a full-time salesman for Hill-Rom from 1971 through 1988, when petitioner resigned his position. Hill-Rom is a manufacturer of specialized hospital equipment, such as hospital beds and related installations and equipment. In 1987, petitioner was 1 of 120 *545 salesmen, each responsible for 1 of the 120 Hill-Rom sales territories. Other than a small amount of mattress sales amounting to $ 2,356 in 1987, petitioner did not provide services for any company or person other than Hill-Rom. The relationship between petitioner and Hill-Rom was governed by a Commissioned Sales Representative Employment Agreement (agreement), which incorporated by reference a sales policy manual (manual). The terms and duties of the agreement provided, in part, as follows: Terms. * * * Representative shall devote his entire time, attention and energies to the business of Hill-Rom and shall not engage in any other business activity * * *. Duties. Representative is employed to solicit orders for and sell Hill-Rom products to all customers and potential customers throughout such geographic territory as may be assigned to Representative from time to time * * *. Particular requirements, responsibilities and duties are described in Hill-Rom's [manual], as periodically revised, which is incorporated herein and made a part hereof. Representative acknowledges receipt of a current copy of such [manual] and agrees to abide by the policies and terms contained *546 therein, as amended, as well as the instructions of such supervisors as may be appointed by Hill-Rom and to render such reports as may be required.
Pursuant to the agreement, the sole compensation of petitioner was commissions, at rates established at the sole discretion of Hill-Rom. Either party had the right to terminate the relationship at any time, even without cause. Upon termination, petitioner was entitled to receive only a percentage of the commissions he would have received had he not been terminated. The agreement also contained a covenant not to compete which prohibited petitioner from soliciting orders for, or selling, products competitive to Hill-Rom products during his employment, or 18 months thereafter. Further, petitioner was required to pay all expenses incurred in operating his sales territory, other than those incurred at the company's direction. Petitioner was also obligated to repay the company for expenses that it paid on his behalf. During 1987, petitioner incurred $ 95,493.84 of unreimbursed expenses while operating his sales territory. On Schedule A of their 1987 income tax return, petitioners claimed a miscellaneous itemized deduction for these *547 unreimbursed expenses. [1] The return was prepared by petitioners' C.P.A. Respondent audited petitioners' 1987 income tax return, and on February 15, 1991, issued a notice of deficiency regarding petitioners' failure to report and pay AMT. In response to the notice of deficiency, petitioners filed a petition with this Court and attached an amended income tax return prepared by the same C.P.A. who prepared the original return. This amended return included an AMT calculation which listed the unreimbursed expenses as an adjustment to taxable income. As a result, the amended return showed additional tax due. Subsequently, petitioners filed an amended petition and submitted an additional amended tax return prepared by petitioners' counsel in this case. This second amended return consisted of a Schedule C, Profit and Loss from Business, and portrayed petitioner as a self-employed *548 independent contractor. The unreimbursed expenses were deducted as business expenses on Schedule C, not subject to the 2-percent floor applicable to miscellaneous itemized deductions. As such, petitioners claimed that a refund was due. An AMT computation was not included with this second amended return. Respondent does not dispute the validity of petitioner's unreimbursed expenses. The controversy results exclusively from petitioners' failure to report the expenses as an adjustment in computing AMT. Respondent asserts that these expenses were properly reported as a miscellaneous itemized deduction, and therefore, must be treated as an adjustment in computing AMT. Petitioners contend that petitioner was actually an independent contractor, and these expenses were more properly reportable on Schedule C as business expenses; therefore, the expenses are not an adjustment in computing AMT. We agree with respondent. OPINION Employee or Independent Contractor
The Code does not define "employee" for purposes of the issue presented in this case. The parties and the Court therefore agree that we must look to common law to determine whether petitioner was an employee or independent *549 contractor with respect to Hill-Rom. See Packard v. Commissioner, 63 T.C. 621, 628 (1975). The existence of a common law employer-employee relationship is a question of fact. Thomas Kiddie, M.D., Inc. v. Commissioner, 69 T.C. 1055, 1057 (1978); Simpson v. Commissioner, 64 T.C. 974, 984 (1975). As respondent has determined that petitioner was an employee of Hill-Rom, petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). The relevant factors considered in determining the existence of an employment relationship are: (1) The degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used in the work; (3) the opportunity of the individual for profit or loss; (4) whether the principal has the right to discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believe they are creating. Simpson v. Commissioner, supra at 984-985. *550 The following additional factors have also been considered: (8) The manner of payment, by the job or by the hour; (9) skill required; (10) the offering of services to the general public rather than to one individual; (11) distinct occupation or recognized trade or calling involved; and (12) custom in the trade. Thomas Kiddie, M.D., Inc. v. Commissioner, supra at 1058. In assessing these factors, no one factor is controlling. Simpson v. Commissioner, supra at 985. Nevertheless, the courts have placed strong reliance on the element of control present in the relationship. Alsco Storm Windows, Inc. v. United States, 311 F.2d 341, 343 (9th Cir. 1962). In determining whether an individual is under sufficient direction and control of another, so as to warrant the finding of an employer-employee relationship, the courts have often referred to the regulations promulgated under the employment tax provisions. Professional & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 231 (1987). Under section 31.3401(c)-1, Employment Tax Regs., an employer-employee *551 relationship Generally * * * exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. * * * In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is not an employee. [Sec. 31.3401(c)-1(b), Employment Tax Regs.]
The test is whether the principal has the right to control the details, not whether he actually asserts that right. Packard v. Commissioner, supra at 629. It is not necessary that the purported employer "stand over the employee and direct every move that he makes." Atlantic Coast Life Ins. Co. v. United States, 76 F. Supp. 627, 630 (E.D.S.C. 1948). The precise degree of control required to find an employer-employee *552 relationship varies with different occupations. United States v. W. M. Webb, Inc., 397 U.S. 179, 193 (1970). When professionals are involved, the techniques and standards of their profession cause an employer's control to be more general. James v. Commissioner, 25 T.C. 1296, 1301 (1956); Fisher v. Commissioner, 24 T.C. 269, 272 (1955). With respect to the instant case, the question remains as to whether the facts indicate that Hill-Rom maintained the right to control petitioner sufficient to establish an employer-employee relationship. Petitioners argue that the holdings in Reserve Natl. Ins. Co. v. United States, 34 AFTR 2d 74-5104, 74-1 USTC par. 9486 (W.D. Okla. 1974), and Standard Chem. Manufacturing Co. v. United States, 42 AFTR 2d 78-5124, 78-1 USTC par. 9431 (D. Neb. 1978), support their argument that petitioner was an independent contractor. The controversy in Reserve Natl. Ins. Co. evolved as a result of the taxpayer's failure to withhold employment taxes from commissions it paid *553 to its agents. The court concluded that the agents were independent contractors and therefore, the taxpayer was not required to withhold against commissions. The court in Standard Chem. Manufacturing Co. was also called upon to analyze the relationship between the taxpayer and its dealers, for purposes of withholding unemployment taxes, and concluded that the dealers were independent contractors. The district courts in Reserve Natl. Ins. Co. and Standard Chem. Manufacturing Co. each recognized that the respective cases contained several factors which could have warranted a finding that an employer-employee relationship existed; however, the majority of facts favored a finding of independent contractor status. Indeed, these cases bear some similarity to the instant case. Primarily, the workers: (1) Were paid strictly on commission; (2) set their own hours; (3) were not provided with office space; (4) were not reimbursed for their expenses; and (5) did not receive vacation or sick time. Nevertheless, each case must be judged on its own merits, and based on the totality of the circumstances. Simpson v. Commissioner, supra at 985. *554 With respect to the instant case, petitioner established at trial the nature and circumstances of his relationship with Hill-Rom. Specifically, he testified that his primary responsibility was to make sales. He further testified that he developed his own selling techniques, was responsible for all selling expenses incurred in pursuit of sales, including demonstration equipment, received no instructions regarding how to locate prospects, make sales representations, or follow up, and set his own hours. Additionally, he stated that all sales meetings were for the purpose of either presentation of new products, presentation of new types of promotions, or to cut commissions or reduce territories. The degree of control asserted by Hill-Rom over petitioner was minimal. Petitioner was permitted significant latitude in conducting his business. [2] The key inquiry, however, is Hill-Rom's right of control, regardless of the extent to which that control was exercised. The agreement indicates that an employment relationship was contemplated by virtue of the following clause: "EMPLOYMENT. Hill-Rom hereby employs Representative and Representative accepts employment * * *." Although labels *555 are not controlling, examination of the relationship created by the agreement also reveals that an employment relationship existed. As the facts indicate, petitioner's duties under the agreement required him to abide by the policies and terms contained in the manual, as well as the instructions of supervisors as may be appointed. Petitioners contend that the manual merely required petitioner to conduct himself in a professional manner, and no supervisory instruction was ever provided. Regardless of the veracity of petitioners' contention, the language in the agreement provided Hill-Rom with the requisite degree of control. At any time, petitioner's supervisors could have begun to assert control over the means and methods used by petitioner to accomplish sales. Petitioner would have been powerless to resist such action. Accordingly, we find that Hill-Rom maintained the right to control petitioner. *556 Recently, this Court issued a Memorandum Opinion in which we held that the taxpayer, an insurance agent professionally associated with Allstate Insurance Co. (Allstate), was an independent contractor. See Butts v. Commissioner, T.C. Memo. 1993-478. In Butts, as in the instant case, the principal asserted minimal control over the activities of the taxpayer (Butts), Butts' only remuneration was commissions, and he personally bore the obligation to pay for most of his business expenses. The existence of several additional factors, however unique to each case, justify opposite conclusions. Specifically, while petitioner and Butts were both required to devote their entire business time to their respective principals, Butts was permitted, under the terms of his agreement with Allstate, to write insurance applications under assigned risk plans (so long as Allstate participated in any such plan), and to represent any affiliate specified by Allstate. In fact, during the year in issue, Butts sold at least three types of insurance, which were not Allstate products. The record in the instant case reveals that petitioner on one occasion sold an item which *557 was not a Hill-Rom product; however, he was reprimanded and forbidden to continue such practice. Further, Butts was permitted to hire his own personnel; petitioner was prohibited from doing the same. Although petitioner testified that he had on occasion hired his own employees, his testimony was uncorroborated and self-serving. In Butts the Commissioner based her position largely upon a discharge provision in the agreement between Butts and Allstate. The provision provided that Allstate could not terminate its relationship with Butts because of unsatisfactory work unless he had received prior notice that his work was unsatisfactory and had been given a reasonable opportunity to bring his performance up to "satisfactory standards". Respondent contended that this provision allowed Allstate to control Butts. We concluded otherwise reasoning that the discharge provision was not tied to corporate control over the manner in which an unproductive agent operated his business. In the instant case the agreement was terminable at will, a characteristic of an employment contract. Thus, Hill-Rom could have discharged petitioner at any time. Under the agreement, petitioner would have *558 only received compensation for services performed; he could not recover damages for breach of contract. Although Allstate withheld taxes, issued a Form W-2, and considered Butts to be an employee, the record revealed that the essential purpose underlying the establishment of the position held by the taxpayer was to offer Allstate agents the opportunity to distance themselves from the corporate control and to permit them to operate within their own business judgment. The agreement between Allstate and Butts also contained a provision which stated that as "an agent you[ylou operate your own office." Based on this unambiguous language, the purpose underlying the establishment of the position, our examination of the entire record, and the authority of Simpson v. Commissioner, 69 T.C. at 987, we concluded that the Allstate agreement's provision, which stated that Butts remained under the "supervision" of Allstate sales management rianagement, "reflects, at best, a careless and imprecise usage of the English language." The record in the instanct instant case reveals no intention by Hill-Rom to offer its sales representatives represcintatives the opportunity *559 to distance themselves from the corporate corporiLte control, nor does the agreement contain a provision requiring the sales representatives to operate their own office. We believe that the agreement in the instant case meant exactly what it said. Our finding that an employment relationship existed is further supported by the testimony of respondent's witness, Richard Berning (Berning), executive director of sales administration for Hill-Rom. Berning testified that an employment relationship was intended. His testimony was corroborated by the fact that taxes were withheld and Forms W-2 were filed by Hill-Rom on behalf of all of its sales representatives. Hill-Rom's decision to withhold taxes was based on its perception of the sales representatives as employees. Petitioner offered no evidence to contradict Berning's testimony, except to indicate that he was unaware of his own intentions at the time the agreement was entered into because he didn't think it mattered. As such, petitioners have failed to satisfy their burden of proof. Respondent's witnesses testified to several additional factors which indicate that an employer-employee relationship existed. For example, Ron Roberson *560 (Roberson), account executive for Hill-Rom and petitioner's supervisor, stated that petitioner relocated from the midwest to California. [3] In accordance with the move, petitioner requested a transfer from Hill-Rom, which required the approval of Hill-Rom executives. Hill-Rom paid most of the expenses of the move and assigned petitioner to a pre-existing sales territory. In fact, the territory had been established as a Hill-Rom sales territory since 1929. Roberson further testified that in conjunction with the transfer, petitioner was provided with all the materials he needed to get started, primarily a customer list of hospitals. Petitioner also received a monthly draw against future commissions, employee benefits, and was required to file daily call reports. Finally, petitioner was prohibited from offering his services to the general public; the agreement *561 required him to devote his entire time to Hill-Rom. Based on the foregoing, we find that petitioner was an employee of Hill-Rom. Negligence
Section 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(1)(B) imposes an addition to tax in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985); see Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Negligence is measured by an objective standard. Howard v. Commissioner, 931 F.2d 578, 582 (9th Cir. 1991), affg. T.C. Memo. 1988-531. Respondent's determination of negligence is presumed correct, and petitioners bear the burden of proving otherwise. Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), *562 affg. T.C. Memo. 1982-337; Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Under certain circumstances, taxpayers can avoid the additions to tax for negligence if they relied on the advice of a competent tax adviser. Ewing v. Commissioner, 91 T.C. 396, 422-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Conlorez Corp. v. Commissioner, 51 T.C. 467, 474-475 (1968); see United States v. Boyle, 469 U.S. 241, 250-251 (1985). In such cases, the taxpayer must have acted in good faith. Horn v. Commissioner, 90 T.C. 908, 942 (1988). Petitioners claim that they were not negligent because they relied upon the advice of their C.P.A. Petitioners had used the same C.P.A. to prepare their income tax return for the previous 12 years. Each year the return was prepared portraying petitioner as an employee. Petitioners allege that a change was made in the tax law, effective beginning in 1987, which disallowed employees a deduction for unreimbursed employee business *563 expenses for AMT purposes. They further allege that their C.P.A. failed to discern this change and thus continued to file petitioners' return as if petitioner was an employee. Petitioners maintain that as a result of the change in the tax law, independent contractors received favorable treatment regarding unreimbursed expenses for AMT purposes, and, had their C.P.A. known of this change, they would have analyzed petitioner's relationship with Hill-Rom and filed as an independent contractor. First, petitioner fails to comprehend the changes that actually occurred regarding the 1987 tax year. There were no substantive changes affecting unreimbursed employee business expenses for AMT purposes. H. Conf. Rept. 99-841 (1986), 1986-3 C.B. (Vol. 4) 1, 259. Unreimbursed employee business expenses were not deductible for AMT purposes before, during, or after 1987. Id.
The only difference between 1987 and prior years was the format of Form 6251, Alternative Minimum Tax. Prior to 1987, AMT was computed by reducing adjusted gross income (AGI) by certain deductions allowed for AMT purposes in arriving at alternative minimum taxable income (AMTI). The list *564 of deductions allowable for AMT purposes did not include unreimbursed employee business expense. [4] *565 Unreimbursed employee business expenses are miscellaneous itemized deductions from AGI in arriving at taxable income. Therefore, these expenses were not allowed as deductions in the AMT calculation. Alternatively, for the year ended 1987, AMT was computed by making certain adjustments to taxable income. As taxable income was arrived at after deducting the unreimbursed employee business expenses, they were required to be added back to taxable income in arriving at AMTI. Sec. 56(b)(1)(A)(i). Petitioners' C.P.A. failed to notice the change and thus did not report the expenses as an adjustment. The record reveals that sometime prior to audit, petitioners' C.P.A. realized his mistake and forwarded to petitioners the first amended return, which was included with the petition. As this amended return showed a substantial amount of tax due and owing, petitioners chose to disregard it. [5] Subsequent to audit, petitioners adopted the position that they are currently advocating. Although the foregoing does contain evidence of negligent conduct, in light of the numerous cases cited in this opinion, which, on similar but distinguishable facts, held that an independent contractor relationship existed, we find that petitioners' assertion of independent contractor status was reasonable. Accordingly, petitioners are not liable for the additions to tax under section 6653(a)(1)(A) and (B). Substantial Understatement
Section 6661(a) provides for an addition to tax on underpayments attributable to a substantial understatement of income tax. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Petitioners had a substantial understatement for the 1987 tax year. The section 6661 addition to tax is not applicable, however, if there was substantial authority for the taxpayer's treatment of the item in issue or if the relevant facts relating to *566 the tax treatment were adequately disclosed on the return. Section 1.6661-3, Income Tax Regs. discusses the application of the substantial authority exception. There is substantial authority for the tax treatment of an item only if the weight of authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions. In light of the numerous cases cited in this opinion, which, on similar but distinguishable facts, held that an independent contractor relationship existed, we find that substantial authority existed to support petitioners' position. As such, we conclude that petitioners are not subject to the addition to tax under section 6661. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. 50 percent of the interest due on $ 21,520.↩
1. Petitioners reported these expenses as unreimbursed employee business expenses on all of their income tax returns from 1971 through 1988.↩
2. Respondent's witness, Ron Roberson, account executive for Hill-Rom and petitioner's supervisor, testified that "Bill didn't need a lot of baby sitting; he was a professional salesman. So we didn't spend a lot of time together."↩
3. It is unclear from the record the exact year that petitioner relocated; however, it is believed that the move occurred during either 1985, 1986, or 1987.↩
4. Prior to 1987, section 55(e) provided the allowable deductions for AMT purposes as follows: (e) Alternative Tax Itemized Deductions -- For purposes of this section -- (1) In general -- The term "alternative tax itemized deductions" means * * * any amount allowable as a deduction for the taxable year (other than a deduction allowable in computing adjusted gross income) under -- (A) section 165(a) * * *, (B) section 170 (relating to charitable contributions), (C) section 213 (relating to medical deductions), (D) this chapter for qualified interest, or (E) section 691(c) (relating to the deduction for estate tax).↩
5. Petitioner testified that at the time he received the amended return he no longer considered himself to be a client of the C.P.A.↩