SAMUEL J. BROWN AND MARTHA L. BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 10077-84
United States Tax Court
T.C. Memo 1994-43; 1994 Tax Ct. Memo LEXIS 46; 67 T.C.M. (CCH) 2101; February 3, 1994, Filed *46 An order granting respondent's motion for summary judgment and decision for respondent will be entered. Samuel J. Brown and Martha L. Brown, pro se. For respondent: Paul J. Krug. DAWSON; POWELL
DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Carleton D. Powell pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE POWELL, Special Trial Judge: This case is before the Court on respondent's Motion for Summary Judgment, filed on November 22, 1993. The facts may be summarized as follows. By notice of deficiency dated March 26, 1984, respondent determined a deficiency in petitioners' Federal income tax and an addition to tax under section *47 6653(a) for the taxable year 1980 in the respective amounts of $ 120,352.42 and $ 6,017.62. By an amended answer, respondent also asserted that the deficiency was a substantial underpayment due to a tax-motivated transaction and that the increased rate of interest under section 6621(c) was applicable. Petitioners filed a timely petition with this Court. At the time the petition was filed petitioners resided in San Antonio, Texas. The deficiency in this case results from the disallowance of a loss in the amount of $ 234,684 and investment expenses claimed with respect to alleged straddle transactions of forward contracts for government-backed financial securities with First Western Government Securities, Inc. (First Western). Losses on transactions with First Western were the subject of the Court's opinion in Freytag v. Commissioner, 89 T.C. 849 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on other issues 501 U.S.    , 111 S. Ct. 2631 (1991). The trial in that case lasted more than 16 weeks. The record includes a transcript containing more than 10,000 pages and approximately 100,000 *48 exhibits. This Court found, based on that record, inter alia, that "The transactions between First Western and its customers were illusory and fictitious and not bona fide transactions." Freytag v. Commissioner, 89 T.C. at 875. This Court also held that, even if the transactions had substance, they "were entered into primarily, if not solely, for tax-avoidance purposes." Id. at 876. Based on the finding that the transactions were not bona fide, this Court concluded that additional interest under section 6621(c) was due on the underpayments. Id. at 886-887. In concluding that the transactions were not bona fide, this Court examined various aspects of the First Western program, including the risk of profit and loss, the hedging operation, the margins required and fees charged, the pricing of the forward contracts, and the manner in which the transactions were closed. In all of these areas we found that the First Western operations were deficient and not conducted as they should have been if bona fide financial transactions were being conducted. We also pointed out that there were other *49 "gremlins" in First Western's world that dispelled the notion that these transactions were bottomed in financial reality -- reversing transactions months later, confirmations being months late, transactions being made with no documentation, etc. Id. at 882. In the case currently before this Court, respondent has moved for summary judgment on the deficiency, addition to tax, and increased interest under section 6621(c). The gravamen of respondent's motion is that the transactions involved in this case are identical to the transactions in Freytag v. Commissioner, supra. The motion is supported by an affidavit of respondent's counsel to that effect, by copies of records pertaining to petitioners' transactions with First Western, and their 1980 income tax return. By Order dated November 23, 1993, petitioners were ordered to file a response to that motion on or before December 22, 1993. No such response has been filed, and we assume that petitioners concede that their transactions with First Western were conducted in the same way as the transactions discussed in Freytag; i.e., the same pricing algorithms were used and the transactions were *50 closed in the same way. Summary judgment under Rule 121 is appropriate when "there is no genuine issue as to any material fact and * * * a decision may be rendered as a matter of law." Krause v. Commissioner, 92 T.C. 1003, 1016 (1989). The nonmoving party cannot rest upon the allegations and denials in the pleading. The response, by affidavit or otherwise, must set forth specific facts showing the existence of an issue of fact. Rule 121(d); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Rule 121(d) further provides that in the event that the nonmoving party fails to respond to a motion for summary judgment, the Court may enter a decision against that party. We believe that summary judgment is appropriate with respect to the First Western loss claimed, the increased interest, and the addition to tax, based on our opinion in Freytag v. Commissioner, supra. While petitioners were not parties to the Freytag litigation and res judicata does not apply, the doctrine of stare decisis is applicable. See Simmons v. Union News Co., 341 F.2d 531, 533 (6th Cir. 1965); see also *51 Leishman v. Radio Condenser Co., 167 F.2d 890 (9th Cir. 1948). Petitioners do not contest respondent's representations that their First Western transactions are identical to the transactions in Freytag v. Commissioner, supra. This Court found that based on that record the First Western transactions were illusory and fictitious in the Freytag case. That holding is controlling here. Therefore, respondent's motion will be granted. Section 6621(c)(1) provides that, if there is a "substantial underpayment attributable to tax-motivated transactions," the interest payable under section 6601 "shall be 120 percent of the underpayment rate". A substantial underpayment attributable to a tax-motivated transaction means "any underpayment of taxes * * * attributable to one or more tax motivated transactions if the amount of the underpayment for such year * * * exceeds $ 1,000." Sec. 6621(c)(2). The term "tax motivated transactions" means, inter alia, "any sham or fraudulent transaction." Sec. 6621(c)(3)(v). From a literal reading of the statute, if a transaction is determined to be a "sham", the increased interest applies. In Freytag v. Commissioner, 89 T.C. at 887, *52 we sustained the Commissioner's determinations that section 6621(c) applied to the First Western underpayments based on our finding that the transactions were "shams." Since petitioners do not contest respondent's representation that their transactions with First Western were identical to those in Freytag, additional interest under section 6621(c) is applicable here. See Howard v. Commissioner, 931 F.2d 578, 582 (9th Cir. 1991), affg. T.C. Memo. 1988-531. Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, is inapposite. In Heasley this Court found that the transactions entered into were not entered into for profit, and, therefore, under section 301.6621-2T, Q&A-4, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984), the increased interest under section 6621(c) was applicable. The Court of Appeals for the Fifth Circuit concluded, however, that the taxpayers had "the requisite profit motive." Heasley v. Commissioner, 902 F.2d at 386. While it is true that *53 in Freytag v. Commissioner, 89 T.C. at 882-886, we held, in the alternative, that the transactions were not entered into for profit, we sustained the additional interest under section 6621(c) on the ground that the transactions factually were "shams", a finding affirmed by the Court of Appeals for the Fifth Circuit in Freytag v. Commissioner, 904 F.2d at 1015-1016, and it is upon that ground that we sustain respondent's determination here. Thus, the determination of a profit motive, so crucial to the Heasley v. Commissioner, T.C. Memo. 1988-408, result concerning section 6621(c), is irrelevant to our holding here. Respondent also determined a negligence addition to tax under section 6653(a) and has moved for summary judgment on this issue. Section 6653(a) provides in relevant part that "If any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations * * * there shall be added to the tax an amount equal to 5 percent of the underpayment." "'Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would *54 do under the circumstances.'" Freytag v. Commissioner, 89 T.C. at 887 (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964)); see also Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Respondent alleges in the Motion for Summary Judgment that deductions claimed as arising from transactions between petitioners and First Western are "attributable to negligence or intentional disregard of rules and regulations". As far as the motion is concerned, this allegation of fact stands unrebutted. Accordingly, summary judgment is appropriate also on this issue. It must be noted in this regard that these transactions could hardly be described as being run-of-the-mill. They involved alleged forward contracts to purchase and sell millions of dollars of mortgage-backed securities. See Freytag v. Commissioner, 89 T.C. at 862-863. There was no market for these contracts, and First Western was on both sides of the transactions. *55 Furthermore, the ratio of the tax losses compared with the payments was huge, approximately 10:1. This latter fact was particularly important because, as the Court of Appeals for the Ninth Circuit recognized in Zmuda v. Commissioner, supra at 1422, during this period there was "extensive continuing press coverage of questionable tax shelter plans." As we noted in our opinion in Freytag v. Commissioner, 89 T.C. at 888, given this scenario, a taxpayer could not merely rely on the documents supplied by First Western, and further investigation was clearly mandated. If there had been any serious examination of the program, "No reasonable person would have expected the scheme to work." Freytag v. Commissioner, 89 T.C. at 889; cf. Hanson v. Commissioner, 696 F.2d 1232, 1234 (9th Cir. 1983), affg. per curiam T.C. Memo. 1981-675. To reflect the foregoing, An order granting respondent's motion for summary judgment and decision for respondent will be entered. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩