ANTONIO VALADEZ AND JOSIE VALADEZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Valadez v. Commissioner
Docket Nos. 21412-92, 11639-93
United States Tax Court
T.C. Memo 1994-493; 1994 Tax Ct. Memo LEXIS 495; 68 T.C.M. (CCH) 874; October 6, 1994, Filed *495 Decisions will be entered under Rule 155. For petitioners: Kevin F. Schoneman. For respondent: Bruce E. Gardner. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6662(a)
1989
$ 12,292
$ 1,185
1990
10,904
[1] 4,362
After concessions, the issues for decision are: (1) Whether petitioners failed to report Schedule C gross receipts for the tax years 1989 and 1990; (2) whether petitioners failed to report interest income for the tax year 1989; and (3) whether petitioners are liable for additions to tax under section 6662. [1]
*496 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Wilton, California, at the time they filed their petition. Petitioner Antonio Valadez (Mr. Valadez) has worked in the United States since 1959. His employment, for the most part, has been with one employer -- Takemori Farms. In 1987, however, Mr. Valadez and his wife Josie (Mrs. Valadez) began a landscaping business known as V & M Lawn Service (V & M). During the years in issue, Mr. Valadez was employed by Takemori Farms and Deer Creek 800 Vineyards. He worked on the weekends for V & M. During this period, Mrs. Valadez was the principal operator of V & M and was responsible for maintaining the business' books and records. Petitioners reported gross receipts for V & M based on the cash receipts and disbursements method of accounting. For 1989 and 1990, petitioners reported total gross receipts of $ 17,930 and $ 8,886, respectively, all of which were deposited in two accounts held in the name of V & M at Bank of America. Total deposits made by petitioners in each of the V & M accounts for *497 the years at issue (including interest) were: Checking account No.
1989
1990
XXXXX-XX754 $ 65,813.97
$ 58,331.97
Savings account No.
XXXX-X-XX676 107.07
3,447.28
Total deposits [1] $ 65,920.03
$ 61,779.25
In addition to the Bank of America accounts, Mrs. Valadez has personally maintained four interest-bearing savings accounts at First Interstate Bank (account Nos. XXX-XXX1548, XXX-XXX3445, [2]XXX-XXXX-X0326, and XXX-XXXX-X0266). During 1989 and 1990, total deposits made by Mrs. Valadez to two of these accounts were: Savings account No.
1989
1990
XXX-XXX1548
$ 10,245.08
$ 8,860.18
XXX-XXX3445
1,048.02
-0-  Total deposits $ 11,293.10
$ 8,860.18
Petitioners made no interbank transfers during the 1989 or 1990 tax years. *498 Interest was earned on the First Interstate Bank savings accounts during 1989 in the following amounts: Savings account No.
Interest income
XXX-XXX1548
$ 267.14  XXX-XXX3445
40.55
XXX-XXXX-X0326
650.00
XXX-XXXX-X0266
269.00
Total interest $ 1,226.69
Petitioners did not report any of this interest as income on their joint 1989 Federal income tax return. During 1989, Mrs. Valadez purchased two certificates of deposit (CD's) from The Bank of Alex Brown (which subsequently merged into First Interstate Bank). These CD's were payable only to Mrs. Valadez and were issued in the combined principal amount of $ 14,000. During 1989, [3] the following interest was earned: CD no.
Interest income
335908
$ 76.46 050288
185.40
Total interest $ 261.86
None of this interest was reported on petitioners' joint return for 1989. *499 OPINION 1. Unreported Gross Receipts
Respondent determined that petitioners failed to report Schedule C gross receipts on their 1989 and 1990 Federal income tax returns in the amounts of $ 22,347 [4] *500 and $ 42,990, [5] respectively. Respondent's determinations are presumed correct in this matter, and petitioners bear the burden of proving otherwise. Rule 142; Welch v. Helvering, 290 U.S. 111, 115 (1933). *501 Section 6001 requires that taxpayers maintain records sufficient to determine their correct tax liabilities. DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Although petitioners claim to have kept records of V & M's gross receipts for 1989 and 1990, no such documentation was produced during the audit or at trial. In the absence of such records, respondent is authorized to use any reasonable means of reconstructing petitioners' taxable income. Sec. 446; Holland v. United States, 348 U.S. 121, 130-132 (1954); Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989); Conforte v. Commissioner, 74 T.C. 1160, 1181 (1980), affd. in part, revd. on other grounds and remanded 692 F.2d 587 (9th Cir. 1982). Respondent utilized the bank deposits method to determine petitioners' unreported Schedule C gross receipts for 1989 and 1990. This *502 method has long been sanctioned by the courts as a reasonable means of reconstructing income. DiLeo v. Commissioner, supra at 867. Under this approach, the Commissioner looks at the deposits and withdrawals involving petitioners' bank accounts. In this type of analysis, a bank deposit is prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). However, deposits of nontaxable items such as loan proceeds or loan repayments are not income and must be subtracted from total bank deposits to arrive at gross receipts. Mallette Bros. Constr. Co. v. United States, 695 F.2d 145, 149-151 (5th Cir. 1983); United States v. Boulet, 577 F.2d 1165, 1167 (5th Cir. 1978); Reaves v. Commissioner, 31 T.C. 690, 718-719 (1958), affd. 295 F.2d 336 (5th Cir. 1961); Williams v. Commissioner, T.C. Memo. 1994-275. Petitioners claim that the amounts respondent has identified as unreported gross receipts for 1989 and 1990 are traceable to two nontaxable sources: (1) *503 Deposits of loan proceeds received from family members, and (2) the deposit of third-party checks on behalf of workers at Takemori Farms. We will address each in turn. a. Deposit of loan proceeds
Petitioners claim to have received $ 47,000 in loans from various family members during 1989 and 1990. [6] Petitioners explain that the deposit of these loans accounts for all or part of the unreported income determined by respondent in those years. We find that the record does not support this claim. The only evidence presented to substantiate the existence of the loans was copies of receipts. These receipts, which note the name of each creditor and the amount received, were produced in response to respondent's request for production of documents. Other than Mr. Valadez's own self-serving statements, no evidence was offered to corroborate their authenticity. Furthermore, petitioners failed to produce any documentation that would demonstrate that the purported loans were actually deposited. Records of petitioners' accounts do not reflect deposits that correspond with the dates and amounts of the purported loans. Accordingly, we find that petitioners failed to meet their burden *504 on this issue. b. Checks cashed on behalf of Takemori Farms' workers
On brief, petitioners suggest that a portion of the unexplained Schedule C gross receipts for 1990 is attributable to check-cashing activities Mrs. Valadez performed on behalf of her husband's coworkers at Takemori Farms. Mrs. Valadez testified that approximately every 2 weeks, she cashed the endorsed paychecks of over 19 of these workers -- each of whom lacked his or her own bank account. Mrs. Valadez stated that she would keep and deposit a portion of these proceeds as reimbursements for purchases she made *505 on the workers' behalf. Petitioners estimate that these reimbursements totaled $ 20,000 for 1990. Other than petitioners' own testimony, we have been presented with no evidence that would substantiate this explanation. Petitioners have produced no canceled checks, no records of the goods bought on behalf of others, nor any specific identification of the amounts claimed as reimbursements. Therefore, we hold that petitioners have failed to prove that the unexplained income in issue for 1990 is attributable to their alleged check-cashing activities. 2. Unreported Interest Income
Respondent determined that petitioners failed to report interest income in the amount of $ 1,488 [7] for 1989. Petitioners argue that they are not responsible for this income, as it is either: (1) Attributable to an account not owned by them, or (2) attributable to funds held on behalf of relatives. a. First *506 Interstate Bank: Savings account No. XXX-XXX1548
This account was held in the name of Mrs. Valadez. Petitioners claim that the funds in this account were received from Mr. Valadez' sister, Jovita, and maintained solely on her behalf in 1989. In support of this, petitioners produced two statements from Jovita. The first, dated February 1992, states that the money held in the savings account ($ 10,000) belonged to her (Jovita) and "is for anything that I might need as living expencies [sic] or for them Josie and my brother in emergencys [sic]". [8] The second statement, dated October 6, 1992, states: "This money is mine to be used for illnes (sic) and death expences (sic)." Bank statements produced by petitioners for 1989 and 1990 show that $ 6,000 was withdrawn from this account. Mrs. Valadez deposited the $ 10,000 in account No. XXX-XXX1548, and she apparently had an unrestricted right to use *507 this money. Petitioners have produced no records that would indicate that the $ 6,000 withdrawn from the account between 1989 and 1990 was spent on Jovita's behalf. Mrs. Valadez had dominion and control over the account. Accordingly, we find that petitioners have not proven that the money in the account was being held for someone else. See Hassan v. Commissioner, T.C. Memo. 1991-229, affd. without published opinion 952 F.2d 393 (2d Cir. 1991). We hold that the interest earned on this savings account during 1989 should be included in petitioners' income. b. First Interstate Bank: Savings account No. XXX-XXX3445
This is a joint account held in the name of Mrs. Valadez and her father-in-law, Anselmo Valadez. Mrs. Valadez testified that this account was established for Anselmo and funded primarily with deposits of his Social Security checks. Petitioners presented no documentation in support of this claim. In the absence of such evidence, and in light of the dominion and control possessed by Mrs. Valadez, petitioners have not met their burden of proof. The interest earned on the account in 1989 is taxable as income *508 to petitioners. c. First Interstate Bank: Savings accounts Nos. XXX-XXXX-X0326andXXX-XXXX-X0266
Petitioners argue on brief that respondent has not shown that these accounts are attributable to them. Petitioners previously stipulated, however, that these two accounts were among those held by Mrs. Valadez at First Interstate Bank during 1989. Accordingly, we hold that interest earned on these accounts in 1989 is taxable as income to petitioners. d. First Interstate Bank: CD's Nos. 335908 and 050288
Petitioners argue that these CD's were bought with funds provided by Jovita and held solely on her behalf. At trial, however, Mrs. Valadez testified that of the $ 14,000 originally invested in the CD's, $ 10,000 was used to pay for the medical and funeral expenses of her father-in-law, Anselmo Valadez. Not only did petitioners produce no evidence to support this testimony, they failed to demonstrate that Jovita exercised any control over the disposition of these funds. Petitioners have failed to meet their burden of proof. The interest earned on the CD's during 1989 was income to petitioners. 3. Accuracy-Related Penalty
Respondent determined additions to *509 tax under section 6662 for the taxable years 1989 and 1990. Section 6662 imposes an addition to tax in the amount of 20 percent of any underpayment attributable to negligence. Respondent's determination of negligence is presumed correct, and petitioners bear the burden of proving otherwise. Rule 142(a). Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances and is measured by an objective standard. Howard v. Commissioner, 931 F.2d 578, 582 (9th Cir. 1991), affg. T.C. Memo. 1988-531; Marcello v. Commissioner, 380 F.2d 509, 511 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Failure by a taxpayer to keep adequate records may justify imposition of additions to tax for negligence. See Lysek v. Commissioner, 583 F.2d 1088, 1094 (9th Cir. 1978), affg. T.C. Memo. 1975-293; Crocker v. Commissioner, 92 T.C. 899, 917 (1989). *510 Failure to maintain adequate records may also indicate disregard of the rules and regulations requiring taxpayers to keep permanent records sufficient to establish their gross income. Sec. 6662(b); Crocker v. Commissioner, supra.
Petitioners have failed to demonstrate that they kept or maintained adequate books and records for the taxable years 1989 and 1990. Although they claim to have kept records of cash receipts for those years, no such documentation was ever produced. Accordingly, we find that petitioners have not met their burden of proof. Therefore, we hold that petitioners are liable for the additions to tax as determined by respondent. [9]
Decisions will be entered under Rule 155. Footnotes
1. Respondent erroneously determined the 40-percent addition to tax for the 1990 tax year. On brief, respondent concedes that the 40-percent gross valuation misstatement penalty is not applicable to petitioners and, instead, submits that the 20-percent addition to tax is applicable to their understated 1989 and 1990 taxable income.↩
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. This total was stipulated to by the parties. There is no explanation of the $ 1.01 difference between this amount and the properly calculated figure of $ 65,921.04. Accordingly, we will accept the parties' stipulated calculation for purposes of this opinion.↩
2. This was a joint account with Mrs. Valadez's father-in-law, Anselmo Valadez.↩
3. Respondent argues on brief that petitioners failed to report interest income of $ 500.22 for 1990. This interest was not included in the notice of deficiency. Since respondent argues on brief that the deficiency sought for 1990 is $ 10,904, an amount equal to that determined in the notice of deficiency, we hold that petitioners will be liable only for unreported interest income found to be attributable to 1989.↩
4. Using information available at the time the notice was prepared, respondent calculated petitioners' unreported Schedule C Gross receipts for 1989 as follows: Bank of America: Deposits
Account No. XX-XXX-X0754
$ 57,228 Less: Schedule C gross receipts
$ 17,930
Gross Form W-2 wages 16,951
(34,881)
Unreported Schedule C gross receipts
$ 22,347 Following issuance of the notice of deficiency, it was stipulated that total deposits at Bank of America and First Interstate Bank in 1989 were $ 65,920.03 and $ 11,293.10, respectively. See supra pp. 3-4. On brief, respondent recalculated unreported gross receipts as follows: Total 1989 bank deposits
(sic)$ 77,227 Gross receipts per return (17,930)
Unexplained deposits $ 59,297.07 Other Sources of Income
Net Form W-2 wages $ 15,327 Net Form W-2 wages 188 Unemployment Compensation 2,988 (18,503.00)
Net unexplained 1989 deposits
$ 40,794.07 Respondent's later calculation produces a greater amount of unexplained income, and hence a greater deficiency. Respondent has indicated, however, that in this matter she is seeking a deficiency based only on the earlier figure of $ 22,347.↩
5. Using the information available at the time the notice was prepared, respondent calculated petitioners' unreported Schedule C gross receipts for 1990 as follows: Bank of America
08-388-00754
$ 58,758
0838-9-03676
3,450
First Interstate Bank
814-0011548
8,860
Total bank deposits
$ 71,068 Less: Schedule C gross receipts
$ 8,886 Gross Form W-2 wages  19,122
(sic) (20,008)
Unreported Schedule C gross receipts
$ 43,060 Respondent has conceded the $ 70 difference between this figure and the $ 42,990 stated in the notice of deficiency as a math error. Following issuance of the notice, it was stipulated that the total deposits at Bank of America and First Interstate Bank in 1990 were $ 61,779.25 and $ 8,860.18, respectively. See supra pp. 3-4. On brief, respondent recalculated unreported gross receipts as follows: Total 1990 bank deposits
(sic) $ 70,614.55 Gross receipts per return
(8,886.00)
Unexplained deposits
$ 61,728.55 Other sources of income
Net Form W-2 wages  $ 17,405.00 Unemployment compensation  2,136.00 (19,541.00)
Net unexplained 1990 deposits
$ 42,187.55 Unlike 1989 (see supra↩ note 4), the amount recalculated as unexplained deposits for 1990 is lower than originally stated in the notice of deficiency. We find that respondent will be bound by her later calculations. Accordingly, we will accept $ 42,187.55 as the correct amount upon which any deficiency shall be based.
6. Mrs. Valadez indicated at trial that petitioners received an additional loan of $ 10,000 from Jovita Valadez in 1989, the proceeds of which were used to buy a mobile home. Petitioners do not contend that this loan was deposited. Moreover, no documentation supporting this loan was ever produced. Accordingly, we find that this $ 10,000 does not reduce the amount of unreported Schedule C gross receipts as determined by respondent.↩
7. Respondent conceded the $ 39 difference between this amount and the $ 1,527 reflected on the notice of deficiency.↩
8. Mrs. Valadez testified that she understood this to mean that she had use of the funds deposited on behalf of Jovita.↩
9. Petitioners are also liable for the sec. 6662 additions to tax to the extent their understatement of tax was "substantial" under sec. 6662(d).↩